# REPORTS OF CASES

DECIDED IN

# THE COURT OF APPEALS

OF THE

## DISTRICT OF COLUMBIA.

### BUSH

*v.*

### THE DISTRICT OF COLUMBIA.

STATUTORY CONSTRUCTION ; LIQUOR LICENSES, REVOCATION OF.

1. In construing a statute, its subject matter, reason and effect must all be looked into, and if its words, taken literally, bear an unreasonable signification, there may be some deviation from the ordinary sense, unless it be plain that such signification only was intended.
2. While it is not within the judicial power, by construction, to cure defects which may render laws unjust or even oppressive, if they clearly exist ; yet no statute should be so construed as to render it unreasonable or unjust in its operation, if there be room for construction at all.
3. Where an act of Congress, regulating the sale of liquor, repeals the old law under which the liquor traffic was conducted, but makes no radical change in public policy concerning such traffic, and there is no expressed intent to revoke and annul licenses granted under the old law, the right of the holder of such a license to sell thereunder, continues until the expiration of the license ; *construing* act of Congress of March 3, 1893, 27 Stats. 563.

No. 211. Submitted May 24, 1893.—Decided June 6, 1893.

HEARING on writ of error to the Police Court. *Judgment reversed.*

STATEMENT of the case by Mr. Justice SHEPARD :

On March 3, 1893, Congress passed an act which took effect from passage, regulating the sale of liquors in the District of Columbia, and the manner of obtaining license therefor. 27 Stats. 563.

Before this time the sale of liquors had been regularly licensed under the provisions of an act of the old Legislative Assembly of the District, enacted August 23, 1871.

While the sale of liquors at wholesale and retail is freely permitted under each act, the later one is more stringent in its provisions with respect to the terms and conditions upon which licenses may be obtained as well as the manner in which the business shall be conducted.

Among other things, the license fee for keeping a bar-room has been raised from $100 to $400 per year.

By provision of the old law, the license year was made to terminate on November 1 of each year, and each license, no matter when issued, was made to expire on that day and had then to be renewed.

The new law provides that no license shall issue for a longer period than one year, but creates no special license year of its own, unless inferentially in the 17th section hereafter noticed.

The plaintiff in error, Bush, had taken out a license under the old law, which, by its terms, authorized him to keep a bar-room until November 1, 1893, and continued the sale of liquors thereunder without taking out, or applying for, a license under the new law.

He was prosecuted in the Police Court of the District, for sales of liquor proved to have been made on March 17, 1893; was convicted and has sued out a writ of error to the Supreme Court of the District in General Term, from whence it has been transferred to this court by operation of law.

Bush did not upon the trial deny the sale of the liquor upon the date charged, but sought to justify under the unexpired license aforesaid, which he offered in evidence.

The court, holding that the new law entirely repealed the old and abrogated all licenses issued thereunder, excluded the license, and this action having been duly excepted to, is assigned as error.

*Mr. A. S. Worthington, Mr. Henry E. Davis* and *Mr. William Birney* for the plaintiff in error:

1. The legislation which resulted in the act of March 3, 1893, was pending in Congress for several months prior to that date and the matter was thoroughly discussed in Congress and in the press. It appears not to have occurred to anybody, in Congress or out of it, prior to the adoption of the act that it was intended to affect existing licenses or would have that effect.

But after the passage of the act the counsel for certain persons who were prosecuted in the Police Court for a violation of the prior laws on this subject, contended that section 21 of the later act repealed such prior laws, and that nobody could be convicted of violating a law which had been repealed. This contention prevailed in the Police Court, and then for the first time it was suggested that if past offenses were obliterated by the repeal of the former law, prior licenses were obliterated, too.

In the court below an express statutory provision was overlooked which would have been a sufficient answer to the point that past offenses were wiped out by the supposed repeal of the old law. Section 13 of the Revised Statutes of the United States provides that:

"The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability." See *U. S.* v. *Reisinger*, 128 U. S., 398; *U. S.* v. *Ulrici*, 3 Dillon, 534; and *U. S.* v. *Bridge Company*, 47 Fed. R., 178-181.

2. Retroactive legislation is not favored by the courts. *Chew Heong* v. *U. S.*, 112 U. S., 559; *U. S.* v. *Heth*, 3 Cranch, 398-413; *Murray* v. *Gibson*, 15 How., 421, 423; *McEwen* v. *Den*, 24 How., 242, 244; *Harvey* v. *Tyler*, 2 Wall., 328, 347; *Sohn* v. *Waterson*, 17 Wall., 596, 599; *Twenty Per Cent. Cases*, 20 Wall., 179, 187.

3. The so-called repealing section 21 of the act of March 3, 1893, adds nothing whatever to the law, and the act will

be construed just as though it were not in the statute. Where a statute is inconsistent with a prior law, there is a repeal of the old law to that extent by necessary implication. Therefore, to add a clause saying that all inconsistent laws are repealed, is to do a vain thing. "*Hickory Tree Road*," 43 Pa. St., 139; *Patterson* v. *Tatum*, 3 Sawyer, 169.

4. The new act is to be considered as a continuation of the old, which is not repealed; and the old law stands as to offenses committed while it was in effect and as to licenses granted before the latter act was passed. *Wright* v. *Oakley*, 5 Metcalf, 406; *Steamship Co.* v. *Joliff*, 2 Wall., 454; *United Hebrew Association* v. *Benshimol*, 130 Mass., 327; *Hirn* v. *Ohio*, 1 Ohio St., 15; *State* v. *Wish*, 15 Neb., 448; *State* v. *Humber*, 37 Wis., 298; *Endlich on Interpretation of Statutes*, Secs. 482, 489, 490 and cases cited in notes; *Smith* v. *People*, 47 N. Y., 330.

A repeal of a law by the enactment of a subsequent inconsistent law extends only as far as the inconsistency extends. *Elrod* v. *Gilliland*, 27 Ga., 467. And this is so, even though there is an express repeal of " all inconsistent " acts. *People* v. *Durick*, 20 Cal., 94.

A statute will not repeal a prior statute merely because it repeals some of its provisions and admits others, or adds new provisions; the later act operates as a repeal only when (and as far as) it plainly appears that it was intended as a substitute for the first act. *Chicago, etc., Co.* v. *U. S.*, 127 U. S., 406.

In the case at bar, even supposing the later act wholly silent on the subject, it could not be held to repeal or to be a substitute for the provision of the earlier law for a liquor-license year; for, on the hypothesis, the subject is wholly untouched and unprovided for.

But, in fact, the later act, by the clearest implication, if, indeed, not by express provision, preserves the liquor-license year of the earlier law. See Sec. 17.

*Mr. S. T. Thomas* and *Mr. James L. Pugh* for the District of Columbia:

1. The first section of the act of March 3, 1893, declares that "no person shall sell, offer for sale, or keep for sale, or traffic in, barter or exchange for goods, in the District of Columbia, any intoxicating liquor except as hereinafter provided." This language taken in connection with that employed in the twenty-first section shows that the act of March 3, 1893, was intended to repeal not only all prior liquor laws, but all licenses granted under those laws.

2. Liquor licenses being mere temporary permits, have neither the qualities of a contract or property. They form a part of the police system of the District, and are subject to be revoked, repealed or continued in force at the will of Congress. *Met. Board of Excise* v. *Barrie*, 34 N. Y., 657; *Fell* v. *State*, 42 Md., 71; *Moore* v. *Indianapolis*, 120 Ind., 485; *Pleuler* v. *Nebraska*, 11 Neb., 547; *Beer Co.* v. *Mass.*, 97 U. S., 25; *Stone* v. *Mississippi*, 101 U. S., 114.

A person holding a liquor license takes it subject to the right of the legislature to repeal or revoke it at any time without compensation, *because it is not property*. *Moore* v. *Indianapolis*, 120 Ind., 483; *Brown* v. *State*, 82 Ga., 224; *Fell* v. *State*, 42 Md., 71; *Com.* v. *Brennan*, 103 Mass., 70.

3. But the seventeenth section of the act of March 3, 1893, provides for compensation, if such a provision could be the basis of an argument against our position; and this seems to be the *gravamen* of the only adjudicated case cited by the plaintiff in error, being the case of *Hirn* v. *State*, 1 Ohio State, 15, and which we believe is the only case where it has been held that because a statute establishing a new system of licenses did not specifically provide for the return or refunding of the license fee for the unexpired period, it was evidence that the legislature did not intend the act to be retrospective in its operation. And that case proceeded on the idea that the license *was property*. At page 20, the court uses this language: "The license was a privilege, an acquired right, which during its term was not dependent on the continuance of the law under which it had been granted."

4. The act of March 3, 1893, changed the whole general policy of the District on the subject of the liquor traffic.

The new law was in no sense a mere substitute extending the provisions of the old law and perfecting its details. The authorities cited on the subject of repeals by implication, are of a class where it was manifest that the previous existing law was merely supplemented by adding something to it. The liquor traffic in the District prior to March 3, 1893, was controlled by municipal regulation. We contend that Congress by the act of March 3, 1893, intended to substitute, and did substitute, a system differing in its essential character from the old one, and entirely dissimilar in its principal details. It raised the license fee; it prohibited the business in certain localities, and placed it under more stringent restrictions than the old law. Here for the first time Congress, as the legislature of the District, has dealt with the whole subject, and established a *system*. There is not to be found in the act of March 3, 1893, anything in regard to the old law, excepting the concluding section, which abolishes it. And the suggestion that the mere fixing of the license year is identical with the act of the local legislature does not furnish any ground on which to base an argument that Congress intended thereby to make this law which was to regulate the sale of liquor merely a supplement. Congress acted in the matter after the Supreme Court of this District had held (*District* v. *Nau*, 20 D. C., 547) that the license act of the Legislative Assembly of 1877 was a *revenue act*, and that there could be no prosecution, except for a *failure to pay the license fee*. Congress evidently intended to effectually regulate and provide a system, which was done by the act of March 3, 1893.

MR. JUSTICE SHEPARD delivered the opinion of the Court:

It is not denied by the plaintiff in error that Congress had the power to annul all existing licenses without compensation or rebate to the licensees; but it is denied that the new law has this effect; on the contrary it is claimed that its provisions expressly recognize the existing licenses as valid for their unexpired terms.

The repealing clause of the act of March 3, 1893, reads as follows:

" Sec. 21. That this act shall be in lieu of and as a substitute for all existing laws and regulations in the District of Columbia in relation to the sale of distilled and fermented liquors in the said District, and that all laws or parts of laws inconsistent with this act, except such laws as are applicable to the sale of liquor within one mile of the Soldiers' Home, be, and they are hereby, repealed."

The language of this clause is peculiar, and renders it apparent that Congress intended this act as a complete substitute for all other laws and regulations upon the subject, and that thereafter all licenses should be taken out and all prosecutions maintained under its provisions alone.

At the same time, it may be said that the general policy of the new law is not different to that of the old; it has not in view the suppression of the sale of liquor, any more than the old; but simply provides more stringent regulations in the interest of law and decency, as well as a considerable increase in the revenue to be derived therefrom.

The new statute makes no provision whatever by its terms with respect to the unexpired licenses issued under the old law, and contains no reference to them unless it may be found in the 17th section, which reads as follows:

" Sec. 17. That all applicants who have had a license during the preceding year shall apply for a renewal of such license on or before November first of each license year, and shall be permitted to continue business until license shall be granted or refused by the excise board; but in all cases of refusal to grant license such proportion of the license fee as may have become due shall be deducted and retained from the sum deposited therefor as the time from the first day of November to the date of such refusal bears to the entire license year, and no other person shall be permitted to conduct said business until a license is issued therefor."

It is contended on behalf of the plaintiff in error that this section refers to the license year as created by the old law

(which is in force still as to some other occupations), and expressly recognizes the liquor licenses thereunder as continuing in force until November 1, 1893.

In the view that we have taken of the case, it is not necessary to decide this question, and this section is only considered in arriving at the intention of Congress as contained in the whole act.

In construing a statute, its subject matter, reason and effect must all be looked to, and if its words, taken literally, bear an unreasonable signification, there may be some deviation from the ordinary sense, unless it be plain that such signification only was intended.

While it is not within the judicial power, by construction, to cure defects which may render laws unjust or even oppressive, if they clearly exist; yet no statute should be so construed as to render it unreasonable, or unjust in its operation, if there be room for construction at all.

Then, in the absence of any expressed intention to abrogate all licenses issued under the old law, and in the light of the subject matter, reason and spirit of the new law, taken in connection also with the ambiguous language of the 17th section and certain expressions in other parts of the act, we cannot find that Congress deliberately intended by the mere repeal of the old law, to destroy all privileges under it, and take from the owners thereof, not only the right to do business under licenses for which they had paid in good faith, but also to confiscate their value for the unexpired term.

If the contrary view should be taken, then we must believe that Congress intended all sales of liquor in the District should cease on March 3, 1893, and not be resumed, under severe penalties, until such time thereafter as the sellers should receive new licenses under this law.

Such intention would possibly not appear so unreasonable if the taking out of new licenses was but a matter of form that could be transacted without delay; but under the new law this process is necessarily attended with delay as well as uncertainty.

Moreover, that it is not the intention to suspend sales in the future even, until permanent licenses can be applied for, considered and granted by the excise board is apparent from the 17th section, whereby the holder of a license under the new law may, on or before the day of its expiration, deposit the fee for another year and continue the business lawfully until such time as the board shall have passed upon his application and refused it.

In Ohio it has been held in a case that has not since been questioned so far as we are advised, that the repeal of a liquor license law and its substitution by a prohibitory enactment, without an express abrogation of the unexpired licenses under the repealed law, did not take away the right to sell thereunder until their expiration. *Hirn* v. *State*, 1 Ohio St., 15.

This decision did not proceed upon the idea that there was any vested right in the license which the State could not take away, for the court expressly held to the contrary.

To the same effect substantially see *Davis* v. *State*, 2 Tex. Ct. App., 425.

The repealing clause of the Ohio act read thus: "All laws or parts of laws licensing the sale of spirituous liquors, which are inconsistent with the provisions of this act, be and the same are hereby repealed."

Construing this, the court said: "This repealing clause affects nothing but the power to grant licenses in future after the law took effect. It repealed the authority in the law of 1831 to grant any more licenses to retail spirituous liquors but nothing further. There is no language employed expressive of any intention to revoke or annul the unexpired licenses previously granted under it. The license was a privilege, an acquired right, which during its term was not dependent on the continuance of the law under which it had been granted. If a license had been granted and taken out under the act of 1831, on one day and the next day the entire law had been repealed, it could not be claimed that the license to keep a tavern was revoked. The repeal of the

law would simply take away the authority to grant future licenses. It is clear that the unexpired licenses were not expressly repealed or revoked by the act of 1851.".

We do not wish to be understood by quoting it as adopting in full the language of the Ohio case, for it is a different one to this in a material particular. In that case a radical change of public policy was made, while in this there has been none.

The view we have taken of this case is supported by *United Hebrew Association* v. *Benshimol*, 130 Mass., 325, in which it was held that an act repealing the former incorporation act and substituting another for it with many changes in details, did not repeal the charter of a corporation formed under the repealed law. The court concluded that it could not be held the legislature intended to destroy corporations created under the repealed law, when the repealing statute only extended the provisions of the old, and perfected its details without changing its general policy.

In the application of the case it must be borne in mind that the charters taken out under the repealed law were not contracts beyond the power of the State to annul, because the law contained an express reservation of power in the State, to alter, annul, or abolish at its pleasure, all charters granted thereunder.

Under such a statute a charter is but a license to do business in a certain way. It can no more be called a contract, in the legal sense of that term, than a license to sell liquor, or to pursue any other taxable calling, can be so called.

Call it a conditional contract if you will, still there is nothing that can distinguish it, in point of law, from a license to pursue a calling.

If any difference, the license has the stronger claim, because the pursuit of the calling is a thing of common right in the absence of a regulatory statute; while the corporation never could exist without a grant of the franchise.

In view of the importance of the interests involved in this case, and of the able and earnest argument on behalf of the

District, we deem it proper to review the leading cases that have been relied on to support the judgment of the court below:

*Moore* v. *Indianapolis,* 120 Ind., 483. This case is not in point, because the repealing ordinance therein contained made express provision for taking up the old licenses and crediting the sums due for the unexpired terms upon the new. The case, therefore, is authority only for the proposition, now scarcely denied anywhere, that a license to carry on a business is not a contract which it is beyond the power of the State to annul.

The same may be said of *Met. Board of Excise* v. *Barrie,* 34 N. Y., 657, for in it also there was no question but that the new law was intended to abolish all licenses under the one that was repealed.

In the case of *Pleuler* v. *State,* 11 Neb., 547, the court did not decide that the license issued under the repealed law could not remain in force without an express declaration to the contrary in the repealing act. The language of the statute is not set out in the report of the case, but in holding that the new law did repeal the former licenses the court said: "We do find in the body of the new law satisfactory evidence of such intention."

We are of the opinion that the court below erred in excluding the license when offered in evidence, and that the judgment should be reversed, and the cause remanded for new trial.

*Reversed.*

The CHIEF JUSTICE dissenting:

I regret exceedingly my inability to concur with my brothers in the view that they have taken of this case, and differing from them so radically as I do, I deem it proper to state the grounds upon which my judgment is founded.

This case has been transferred to this Court from the General Term of the Supreme Court of the District of Columbia where it was pending on writ of error to the Police Court of the District. The plaintiff in error was tried and

convicted in the Police Court of the alleged offense of violating the present license law of the District, in keeping a bar-room and selling therein intoxicating liquors, without license obtained therefor, contrary to the provisions of the recent act of Congress, approved March 3, 1893, entitled "An act regulating the sale of intoxicating liquors in the District of Columbia."

It is conceded that the act took effect and went into operation from the date of its passage, that is, the 3d day of March, 1893. It does not profess to be amendatory of or supplementary to any previous or then existing legislation upon the subject of its provisions, but it professes to be, as it doubtless is, an act to regulate fully and completely the subject of the sale of intoxicating liquors in this District, and that without any reference to pre-existing law. It declares a severe penal system of police upon the subject, coupled with an object of revenue; whereas the pre-existing law upon the subject, as enacted by the late Legislative Assembly of the District, August 23, 1871, was, as construed by the Supreme Court of the District, a mere revenue law.

This act of Congress makes no express saving or reservation with regard to pre-existing licenses, nor for crediting any part of the amount paid therefor on the amount required to be paid for licenses under the new law. It is conceded, indeed it could not be denied, that the licenses in existence at the time the act of Congress went into effect, were not contracts as between the holders thereof and the municipal government of the District. They were, in legal contemplation, mere permits, subject at all times to revocation by legislative authority competent to prescribe rules of police, and as the Congress of the United States reserves full and unlimited legislative power, both of a political and of a municipal nature, over this District, there can be no question of its power to regulate or entirely prohibit the sale of intoxicating liquors within the District, and to revoke all licenses previously granted. For, as declared by the Supreme Court of the United States in *Crowley* v. *Christensen*,

137 U. S., 86, "The police power of the State is fully competent to regulate the business, to mitigate its sale or to suppress it entirely. There is no inherent right in a citizen to sell intoxicating liquors by retail; it is not a privilege of a citizen of the State or of a citizen of the United States. As it is a business attended with danger to the community, it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to give licenses for that purpose. It is a matter of legislative will only"; therefore, all persons obtaining licenses under such legislative power must take them subject to be revoked, whenever the legislature may deem it proper to do so.

The single question raised upon the bills of exception taken by the plaintiff in error at the trial below is, whether the act of Congress has, by fair and rational construction, entirely repealed and superseded all prior legislation upon the subject of the grant of licenses for the sale of liquor in the District, and thereby nullified all pre-existing licenses, and made it necessary for parties holding such licenses to apply for and obtain new licenses under the new law; or whether such licenses can, by fair construction, be allowed to run and afford protection to the parties holding them, until the end of the current year for which they were granted.

On behalf of the plaintiff in error it has been ingeniously argued that the laws relating to the liquor traffic in the District, and regulations thereunder, in force prior to, and at the date of the passage of the act of Congress, under consideration, are not repealed by the act of Congress; but that the old laws and regulations in force at the date when the act of Congress came into effect, and the act of Congress are to be considered *in pari materia*, and the intent of Congress is to be gathered from the whole taken together.

To refute this contention and to make it plain that the two license systems cannot co-exist or stand together, even for a

limited time, it is only necessary to examine and compare the provisions of the act of Congress with those of the prior law. And it is proper, first, to refer to the provisions of the prior law.

The act of the Legislative Assembly of this District, approved August 23, 1871, provided that no person should be engaged in any trade, business or profession therein mentioned, until he obtained a license, and that every person liable for license tax, who, failing to pay the same within thirty days after the same became due, for such neglect should, in addition to the license tax imposed, pay a fine or penalty of not less than five nor more than fifty dollars, and a like fine or penalty for every subsequent offense. It was further provided that every place where liquors were sold in quantities less than a pint to be drank on the premises, should be known as a bar-room, sample room or tippling house; and the license tax or fee for such place was $100 annually, and the proprietors of beer gardens were required to pay a license tax of five dollars per day, and all dealers in distilled and fermented liquors, wines and cordials, other than the keepers of bar-rooms, sample rooms and tippling houses, were required to pay annually ten dollars for each thousand dollars of capital invested, but that no license should be for a less sum than twenty-five dollars. And all annual licenses were required to date from the 1st of November of each year, and expire on the 31st of October following; and the license of every person liable for license tax after the 1st of April, July, and November, respectively, was required to date from the 1st of the month in which the liability began, and payment to be made for a proportionate amount.

These were the principal provisions of the license laws of the District applicable to the sale of liquor, that were in force when the act of Congress of the 3d of March, 1893, went into effect; and it was under these provisions of the prior law that the plaintiff in error obtained his license to keep a bar-room on the 23d day of December, 1892, to expire on the 31st day of October, following.

The act of Congress of the 3d of March, 1893, contains twenty-one sections; and, as I have said, it professes to provide for the full and complete regulation of the entire liquor traffic in the District of Columbia, and makes no provision whatever for continuing in force existing or unexpired licenses.

In section 1, it is declared that no person *shall sell, offer for sale, or keep for sale, or traffic in, barter or exchange for goods*, in the District of Columbia, *any intoxicating liquor, except as hereinafter provided.*

Section 2 constitutes the three Commissioners of the District a board of excise, whose duty it shall be to pass upon all applications for licenses to sell intoxicating liquors, and whose action thereon shall be *final and conclusive*; and such board is clothed with power to make such rules and regulations for carrying into effect the act as they may deem requisite and proper.

Section 4 prescribes the mode and manner of making the application for the license, the facts essential to entitle the applicant to obtain the license, and the manner of verification of such facts.

And by section 5, every applicant for license to keep a bar-room within the definition of the act, is required to obtain and present with his application the written permission of a majority of persons owning real estate, and a majority of residents keeping house in the immediate vicinity of the location of such bar-room.

And by section 6, it is provided "that under the license issued *in accordance with this act* no intoxicating liquors shall be sold, given or in any way disposed of to any minor or intoxicated person, or to an habitual drunkard, nor to any person who is in the habit of becoming intoxicated, if such person's wife, mother or daughter shall, in writing, request that the saloon keeper shall not sell to such person above the age of sixteen years, or between twelve o'clock midnight and four o'clock in the morning, during which last-named hours and on Sundays, every bar-room and other place

where intoxicating liquors are sold shall be kept closed, and no intoxicating liquor sold."

Section 7 provides that no license shall be issued for a longer period than one year; and—

Section 8 declares that all licenses authorized by the act shall be of two classes, wholesale liquor licenses, and bar-room licenses. The fee for a wholesale license shall be $250 per annum, and for a bar-room license the fee shall be $400 per annum.

And by section 9, *every person* receiving a license to sell *under this act* shall frame it and keep it exposed under glass in some conspicuous place in the room where the liquor is sold.

Section 12 prescribes penalties and declares that any person doing business or selling liquor " *without first having obtained a license to do so, as herein provided,* or any person who shall engage in such sale in any portion of the District where the sale thereof is prohibited, upon conviction thereof shall be fined not less than $250 nor more than $800, or be imprisoned in the jail or workhouse for not less than two months nor more than six months; and upon every subsequent conviction, in addition to the pecuniary penalties just mentioned, the party shall be imprisoned in the workhouse for not less than three nor more than twelve months.

And by section 13 it is provided, that any person *having obtained a license under this act*, who shall violate any of its provisions, shall upon conviction thereof be fined not less than $50 nor more than $200, and upon every subsequent conviction of like offense, during the running of the license, shall be fined a like amount, and, *in addition* to such fine, shall pay a sum equal to 25 per cent. of the amount of fine imposed for the offense immediately preceding, and have his license revoked, and on non-payment shall be imprisoned.

Section 14 prescribes the punishment of those convicted of aiding and abetting the violation of the provisions of the act.

And section 17 declares that all applicants who have had licenses *during the preceding year* shall apply for a *renewal*

of such license on or before November 1st of *each license year*, and shall be permitted to continue business until license shall be granted or refused by the excise board; but in all cases of refusal to grant license such proportion of the license fee as may have become due shall be deducted and retained from the sum deposited therefor as the time from the 1st of November to the date of such refusal bears to the entire license year.

These several provisions of the act of Congress, if there were no more explicit provision or declaration to be found in the act upon the subject of the repeal of prior legislation, are sufficient to make it clear beyond doubt that all pre-existing legislation authorizing the grant of licenses for the sale of intoxicating liquors in the District was entirely supplanted and by necessary implication repealed. The act of Congress devises and provides for the enforcement of a complete system of liquor licenses in no manner dependent upon the provisions of any prior system. No prior legislation authorizing the grant of licenses can stand or co-exist with the act of Congress, the latter act being exclusive. Two entirely different systems founded in different policies, and where the licenses are granted upon different terms and conditions, and the entire system enforced under different sanctions, cannot, in the nature of things, be executed together. As we have seen, the terms and conditions upon which licenses are authorized by the act of Congress to be granted, the agency authorized to act upon applications for and to grant or refuse licenses, the fee for the licenses, the fines and penalties prescribed for violation of the law, and the restrictions upon the use of the license, are all essentially and most radically different from the regulations prescribed by the pre-existing law.

It is urged, however, that the 17th section of the act of Congress recognizes the continued existence of the licenses granted under the prior law, and that by implication, such licenses should be maintained for the full period for which they were granted. But it is plain, to my mind, at least, the

provisions of that section apply only to the licenses granted under the act of Congress, and not to those granted under the prior law. As matter both of convenience and necessity, the license must have a terminal point in time, and that point was fixed in the act of Congress in accordance with what had been the terminal point of time in the previous law; but with no purpose of adopting the prior licenses issued under that law. The right of *renewal* excludes the idea that it is of a license issued under the former system, such license being quite a different thing from that issued under the act of Congress, and therefore it cannot be supposed that such license was intended to be made anew, and to have new life imparted to it under the new law. The whole scheme and policy of the new law is entirely inconsistent with any such construction; indeed, it is only necessary to read the 17th section in connection with the 8th section of the act to be convinced of the unsoundness of the contention of the plaintiff in error upon this point. Moreover, it is very clear that the penalties and punishments prescribed for the violation of the provisions of the act of Congress, could not be applied and enforced for the violation of the provisions of the pre-existing law, wholly different in its provision and policy, and upon the concession that the act of Congress takes effect from the date of its approval, the consequence would be, upon the theory of the continuance of the former license, that there could be no punishment for any, even the grossest, violations of the license system by a party acting under such former license. This certainly was never intended.

It has also been urged in argument for the plaintiff in error that, upon the theory of this prosecution, there could be no licenses issued for the sale of liquor in the District before the 1st day of November next, and that consequently the entire business of the liquor traffic in the District would be suspended until that time. But that is not correct. It is true, with the repeal of the prior license law, all the licenses issued under that law would necessarily cease to exist, and would no longer protect the holders; but the act of Congress

contemplates the issue of licenses at any time from the date of its passage to terminate with the succeeding 31st of October. The whole matter can be and has been duly regulated by rules and regulations adopted by the board of excise commissioners, who are authorized by the second section of the act to make such rules and regulations, and under those regulations parties may obtain licenses at any time upon compliance with the law and satisfying the commissioners that the license ought to be issued.

In what has been said, the object has been to show clearly and distinctly that all of the provisions of the prior law authorizing the granting of licenses to sell liquor in this District have been repealed by necessary implication in the passage of the act of Congress of the 3d of March, 1893; that the provisions of the two systems are wholly incongruous and cannot stand together, and that there is nothing to justify the contention by the plaintiff in error that a license granted under the former or pre-existing license system can be maintained and allowed protective force under the present license system as declared by the act of Congress.

But Congress, as if to remove all possible ground for question or doubt upon the subject, by the 21st section of the act, has expressly declared " that this act shall be *in lieu of and as a substitute for all existing laws and regulations* in the District of Columbia, in relation to the sale of distilled and fermented liquors in the said District, and that *all laws or parts of laws inconsistent with this act*, except such laws as are applicable to the sale of liquor within one mile of the Soldiers' Home, *be, and they are hereby, repealed.*"

Terms more comprehensive and unequivocal in meaning could not have been employed to declare the purpose of Congress to repeal *all* former laws authorizing the issuing of licenses to sell liquor in the District, and with such repeal, as the necessary consequence, to revoke all unexpired licenses issued thereunder; and it is not for this court to restrict the plain meaning of the language of the statute, or to attempt to avoid the force of it, to relieve what would appear to be a

hardship or injustice to individuals; for whatever injustice or hardship may be inflicted by the legislation in question, redress must be sought of the proper power to grant relief. This court has no power over the subject. We must take the law as we find it written, and give it effect according to the plain language employed, and to do that in this case leaves no alternative, according to my judgment, but to affirm the judgment of the Police Court.