**COLUMBIA REALTY VENTURE, Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent,**

Tenants of 1601 Argonne Place, N.W., Intervenors.

**TENANTS OF 1601 ARGONNE PLACE, N.W., Petitioners,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent,**

Columbia Realty Venture, Intervenor.

Nos. 89–1256, 89–1315.

District of Columbia Court of Appeals.

Argued Nov. 15, 1990.

Decided May 15, 1991.

Eric A. Von Salzen, with whom Anna E. Blackburne was on the brief, Washington, D.C., for Columbia Realty Venture, petitioner in No. 89–1256 and intervenor in No. 89–1315.

Eric M. Rome, Washington, D.C. for Tenants of 1601 Argonne Place, N.W., intervenors in No. 89–1256 and petitioners in No. 89–1315.

Herbert O. Reid, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., filed a statement in lieu of brief on behalf of respondent.

Before FERREN, TERRY and FARRELL, Associate Judges.

TERRY, Associate Judge:

In this case both the tenants and the landlord, Columbia Realty Venture ("Columbia"), seek reversal of portions of an order of the Rental Housing Commission granting Columbia's capital improvement petition.

The tenants claim two Commission errors. First, they assert that the Commission erred in failing to require Columbia to present proof that all necessary permits had been obtained before beginning work on the capital improvements. Second, the tenants maintain that the Commission erred by including the cost of hot water risers as a capital expense without a finding that the interests of the affected tenants were protected. The second argument is without merit. We agree, however, with the tenants' first claim of error and remand the case to the Commission for further proceedings.

Columbia contends that the Commission improperly reversed the hearing examiner's decision to include a contractor's fee in the total cost of the capital improvements. We hold that the Commission erred in placing the burden of proof on Columbia and requiring it to justify the fee. We agree with the observation in Columbia's brief that the Commission's disallowance of the fee penalized Columbia "for not answering questions that nobody asked." We therefore reverse the decision of the Commission

on this point and remand with directions to reinstate the ruling of the hearing examiner.

## I

Columbia is the owner of an apartment building at 1601 Argonne Place, N.W., known as the Chalfonte Apartments. In April 1987 Columbia filed a capital improvement petition with the Rental Accommodations and Conversion Division (RACD) pursuant to D.C.Code § 45–2520 (1990) and the Rules of the Rental Housing Commission, 14 DCMR §§ 3800–4210 (1989). The petition sought an increase in the rent ceilings for the individual units in the Chalfonte in order to reimburse Columbia for capital improvements being made throughout the building. Supporting documents showed that the anticipated cost of those improvements was $814,629.00, which included a ten percent contractor's fee to be paid to Norman Bernstein Management, Inc., the company managing the Chalfonte. Following an audit by the RACD, a provisional determination was made to permit an increase of $55 per month per unit.

A group calling itself the 1601 Argonne Place Tenants Association opposed the petition. After an evidentiary hearing,[1] a hearing examiner approved the proposed increase of $55 per month per unit, on certain stated conditions not challenged in this court.

The tenants appealed to the Rental Housing Commission (RHC), arguing that under the applicable statute Columbia had to prove that it had obtained all necessary permits before the capital improvement petition could be granted. Finding it to be inequitable to demand such proof under the circumstances of the case, the RHC refused to require Columbia to present evidence that it had obtained such permits. The RHC also reduced the rent ceiling adjustment for some apartment units by applying the costs of hot and cold water riser replacements only to those units which actually received them. In addition, the RHC reversed the examiner's allowance of the ten percent contractor's fee and adjusted the rent ceilings accordingly. Both landlord and tenants seek review of the RHC's final order.

## II

The tenants maintain that D.C.Code § 45–2520(b)(3) (1990) requires a landlord to present evidence that all necessary permits and approvals for building changes have been acquired before a capital improvement petition may be approved.[2] All parties acknowledge that under two recent decisions of the RHC, issued after Columbia filed its petition, a landlord is now required to present evidence that the required permits have been obtained or to demonstrate that no permits are required as part of the *prima facie* showing for an increased rent ceiling based on capital improvements. *See 1841 Columbia Road Limited Partnership v. 1841 Columbia Road Tenant Ass'n,* CI 20,082 (D.C.R.H.C. December 23, 1987), *aff'd,* 575 A.2d 306 (D.C.1990); *Hampton Courts Tenants' Ass'n v. William C. Smith & Co.,* CI 20,-

---

**1.** There were actually two hearings. After the tape recording of the first hearing was misplaced, the parties agreed that the matter should be reheard *de novo.* The instant petitions for review are based on the results of the second hearing.

**2.** D.C.Code § 45–2520 provides in pertinent part:

 (a) On petition by the [landlord], the Rent Administrator may approve a rent adjustment to cover the cost of capital improvements to a rental unit or housing accommodation if:

(1) The improvement would protect or enhance the health, safety, and security of the tenants or the habitability of the housing accommodation; or

(2) The improvement will effect a net saving in the use of energy by the housing accommodation, or is intended to comply with applicable environmental protection regulations, if any savings in energy costs are passed on to the tenants.

 (b) The [landlord] shall establish to the satisfaction of the Rent Administrator:

(1) That the improvement would be considered depreciable under the Internal Revenue Code (26 U.S.C.);

(2) The amount and cost of the improvement including interest and service charges; and

(3) That required governmental permits and approvals have been secured.

176 (D.C.R.H.C. May 20, 1988), *rev'd in part on other grounds*, 573 A.2d 10 (D.C. 1990).

By the time the tenants' appeal reached the RHC, the RHC was aware that its procedures failed to comply with the statutory mandate. Nevertheless, after balancing the equities, the RHC concluded that it would be unfair to require Columbia to prove the existence of the necessary permits. Thus the RHC ruled that it would apply the permit requirement of section 45–2520(b)(3) prospectively only, so that Columbia was not required to make any showing that permits had been obtained. This ruling was error.

■ An agency's interpretation of its own regulations or of the statute which it administers is generally entitled to great deference from this court. *E.g., Levy v. District of Columbia Board of Zoning Adjustment*, 570 A.2d 739, 746 (D.C.1990); *George Washington University v. District of Columbia Board of Zoning Adjustment*, 429 A.2d 1342, 1348 (D.C.1981). There is, however, a well-recognized exception to this rule. When the agency's decision is inconsistent with the applicable statute, as it is in this case, we owe it far less deference, if indeed we owe it any deference at all. *James Parreco & Son v. District of Columbia Rental Housing Commission*, 567 A.2d 43, 48 (D.C.1989); *see Saah v. District of Columbia Board of Zoning Adjustment*, 433 A.2d 1114, 1116 (D.C.1981) (when an agency's decision "rests on a question of law, the reviewing court has the greater expertise, and the agency decision is therefore accorded less deference" (citations omitted)). We have repeatedly held that a regulation issued by an administrative agency must be "consistent with the statute under which it was

promulgated." *District of Columbia v. Catholic University*, 397 A.2d 915, 919 (D.C.1979); *accord, Manhattan General Equipment Co. v. Commissioner*, 297 U.S. 129, 134, 56 S.Ct. 397, 399, 80 L.Ed. 528 (1936); *Tenants of 738 Longfellow Street, N.W. v. District of Columbia Rental Housing Commission*, 575 A.2d 1205, 1213 (D.C.1990); *Anderson v. William J. Davis, Inc.*, 553 A.2d 648, 650 n. 6 (D.C.1989). Common sense tells us that the same must be true of any agency action: that it may not be contrary to or inconsistent with the statute under which the agency purports to act.

■ The Supreme Court has established a two-part test for judicial review of agency decisions which interpret or apply statutory provisions. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, the reviewing court must determine whether the meaning of the statute is clear. Only when the statute is ambiguous does the court turn to the second part of the inquiry, which is to determine whether the agency's decision is based on a permissible construction of the statute. *Id.* at 842–843, 104 S.Ct. at 2781. In this case, since the statute very plainly requires a landlord who files a capital improvement petition to "establish to the satisfaction of the Rent Administrator ... [t]hat required governmental permits and approvals have been secured," D.C.Code § 45–2520(b)(3), we do not reach the second part of the *Chevron* inquiry.[3] Because the agency action in this case is contrary to the procedure required by law, we remand the case to the RHC to enable it to receive evidence from Columbia regarding the necessary permits.[4]

---

3. In *Davenport v. District of Columbia Rental Housing Commission*, 579 A.2d 1155, 1157 (D.C. 1990), we upheld a decision by the Rent Administrator to apply a new construction of a statute prospectively only. *Davenport* is not controlling here. The statute before us in the case at bar is susceptible of only one interpretation, whereas the statute at issue in *Davenport* was not clear on its face and needed a clarifying interpretation, which the Administrator provided.

4. Columbia has not asserted that requiring it to prove affirmatively the issuance of the necessary permits would present a substantial hardship. Indeed, we do not see how it could, since Columbia in any event must obtain such permits before beginning any structural work on the building. *See* D.C.Code § 5–425 (1988). In most cases, we suspect, compliance with section 45–2520(b)(3) will be a mere technicality for any landlord.

### III

■ The tenants also claim that the cost of replacing the hot and cold water risers should be disallowed *in toto*. They correctly note that D.C.Code § 45–2520(c)(2) (1990) requires the Rent Administrator, upon granting a capital improvement petition of the sort involved here, to "make a determination that the interests of the affected tenants are being protected" before the rent ceiling may be increased. The tenants assert that neither the hearing examiner nor the RHC made such a finding in this case.

The hearing examiner, rejecting the tenants' argument, concluded that the record was "replete with evidence supporting [the landlord's] claim that ... the hot and cold water risers are in a state of disrepair and require replacement." He also took note of "unrebutted testimony that [previously] there had been severe leakage problems with the risers," which Columbia had attempted unsuccessfully to repair before deciding to replace them. The cost of these earlier repairs, which the examiner characterized as "patch work," was not included in the capital improvement petition as a claimed expenditure. Finally, the examiner was satisfied that all of the proposed improvements would "enhance and protect the health, safety, and security of the tenants." These portions of the hearing examiner's decision, in our view, substantially complied with section 45–2520(c)(2). *Cf. Perkins v. District of Columbia Department of Employment Services*, 482 A.2d 401, 403 (D.C.1984) (examiner's finding on material issue of fact "surely complies" with statute, even though characterized as "conclusion of law" in examiner's decision).

On appeal, the RHC also addressed the tenants' claim that Columbia had failed to sustain its burden regarding "the impact of these items [all the proposed improvements, including the risers] on the health and safety of the tenants or the habitability of the housing accommodation." The RHC concluded:

> Under questioning by tenants' counsel, Mr. Durham [the landlord's representative] gave an explanation as to why the [landlord] was undertaking each one of the proposed expenditures. *In each case there was some defect the improvement was meant to remedy.* The hearing examiner was satisfied that *all* of the expenditures would enhance and protect the health, safety, and security of the tenants or the habitability of the housing accommodation. [Emphasis added.]

The RHC then said it was "satisfied" that the hearing examiner's findings were sustainable, but in another section of its opinion the RHC limited the permissible increase in the rent ceiling to fifteen percent and applied it only to the units receiving the actual benefit of the risers, instead of the twenty percent allowable when the improvement is building-wide. *Compare* D.C.Code § 45–2520(c)(1) (building-wide improvements) *with* D.C.Code § 45–2520(c)(2) (other improvements).

On this point our standard of review is whether the RHC's decision is supported by substantial evidence. *See* D.C.Code § 1–1510(a)(3)(E) (1987); *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938) (defining "substantial evidence"). We hold that it is. The hearing examiner and the RHC had before them uncontradicted testimony that the old risers were rotten and that they were replaced in a particular manner in order to minimize the cost and inconvenience to the tenants. This evidence was sufficient to sustain the examiner's conclusion that the expenditures would "enhance and protect the health, safety, and security of the tenants," which we have just held to be, on the record before us, substantially in compliance with the requirement of "a determination that the interests of the affected tenants are being protected." D.C.Code § 45–2520(c)(2).

### IV

Columbia seeks reversal of the RHC decision disallowing the ten percent contractor's fee. Although the hearing examiner had included the fee in the cost of capital improvements, the RHC reversed after finding no evidentiary support for the ex-

aminer's decision.[5] We reverse the RHC and reinstate the ruling of the hearing examiner on this point.

 The tenants made no formal objection to this fee at the hearing. Instead, they merely asserted that the fee was "nothing but a kickback to the management company," but offered no support for their allegation. The District of Columbia Administrative Procedure Act makes clear that the party asserting a particular fact, as the tenants did here, has the burden of affirmatively proving that fact. D.C.Code § 1–1509(b) (1987); *see Allen v. District of Columbia Rental Housing Commission*, 538 A.2d 752, 754 (D.C.1988). The examiner properly rejected the tenants' challenge, pointing out that "[i]t has been the policy to accept such fees, and [the tenants] have advanced no relevant law in support of a contrary position."

Where the RHC went astray in this case was in failing to recognize that the tenants had the burden of proving that the contractor's fee was "nothing but a kickback." Because contractors' fees in cases such as this are customary, or at least not unusual,[6] and because there is nothing in any pertinent statute which requires a landlord to provide additional detail regarding such an expense, the tenants were obliged to support their challenge to this particular fee with something more than an unsubstantiated allegation. They simply failed to do so. The examiner saw this failure and rejected their challenge to the fee.

The RHC, in reversing this ruling, erred in shifting the burden of proof to the landlord. As we said in *Allen, supra,* the party asserting a particular fact—here, the "fact" that the fee was "nothing but a kickback to the management company"— "has the burden of affirmatively proving that fact.... This burden cannot be sustained simply by showing a lack of substantial evidence to support a contrary finding." 538 A.2d at 754 (citations omitted). Since the tenants presented no proof of a kickback before the hearing examiner, the RHC's ruling in their favor on this point must be reversed.

### V

To sum up, we (1) affirm the RHC's decision to include the cost of replacing the hot and cold water risers as part of the capital improvement costs, (2) reverse the RHC's refusal to allow the ten percent contractor's fee and reinstate the hearing examiner's ruling which allowed that fee, and (3) remand this case to the RHC for further proceedings with respect to the issue of whether Columbia has obtained all "required governmental permits and approvals," as mandated by D.C.Code § 45–2520(b)(3).

*Affirmed in part, reversed in part, and remanded for further proceedings.*

---

**5.** The RHC ruled that because Columbia had "made no meaningful showing why that fee was being paid, what the management company would do to earn it, and whether or not the services to be rendered were already covered by the management agreement," it had "failed to meet its burden of proof on this item...."

**6.** *See, e.g., William Penn Apartments v. William Penn Tenants' Ass'n,* No. HP 10,578 (D.C.R.H.C. August 16, 1985) (management fee which a landlord pays to himself allowable as an expense).