Jeremy BATES, et al., Petitioners,

v.

DISTRICT OF COLUMBIA BOARD OF ELECTIONS AND ETHICS, Respondent,

Peter Espenschied, Intervenor.

No. 92–AA–1428.

District of Columbia Court of Appeals.

Argued March 31, 1993.

Decided May 27, 1993.

---

Howard E. Shapiro, with whom Jeremy Bates and Ross Ain, Washington, DC, were on the brief, for petitioners.

William H. Lewis, Washington, DC, with whom Alice P. McCrory, was on the brief, for respondent.

Peter Espenschied, pro se, for the intervenor.

Before SCHWELB, FARRELL, and KING, Associate Judges.

KING, Associate Judge:

Petitioners seek review of the Board of Elections and Ethics ("the Board") certification of intervenor Peter Espenschied as the winner in the November 3, 1992, election for Advisory Neighborhood Commission ("ANC") single-member district 3C09. Concluding that the Board did not adhere to the plain meaning of the statute which required them to certify the candidate who received the highest number of votes, we reverse the decision of the Board and remand for further proceedings consistent with this opinion.

Petitioners, residents of ANC district 3C09, voted in the November 3, 1992, election for the ANC Commissioner for that district. Following the election, the Board determined that Ms. Lois Noroozi received 436 votes (59.2% of the total votes), while the incumbent and intervenor in this action, Mr. Peter Espenschied ("incumbent"), received 280 votes (38% of the total votes). On November 6, 1992, prior to the Board's certification of the winner of the election, Ms. Noroozi informed the Board in writing that she was "withdrawing from holding the office of ANC Commissioner for 3C09" because she no longer lived within the boundary of that ANC district. Her letter explained that she moved out of her district approximately two weeks before the election, and that at the time of her change of residence she mistakenly believed she was only required to reside in the ANC prior to filing her petition for candidacy.[1]

On November 18, 1992, the Board held a "special meeting" to certify the results of the November 3, 1992, ANC elections. At the meeting the Board noted that at the time of the election, the electors in district 3C09 were not aware that Ms. Noroozi was not a "viable candidate." Faced with the withdrawal of Ms. Noroozi, the Board determined: "[w]e do, in fact, need to certify, under the current case law, the second-place finisher, and ... we do not have, in any event, specific authority not to declare a winner in this circumstance and to call a new election."[2] In its posting of the ANC election results, the Board certified the incumbent as the winner, with the notation that Ms. Noroozi "withdrew after the date of the election prior to certification. The person receiving the second highest number of votes is declared the winner." Petitioners filed a timely petition for review of this certification on November 24, 1992. *See* D.C.Code § 1–1315(b) (1992) (any person who voted in an election may petition this court to review such election within seven days of the Board's certification and the court "may set aside the results so certified"). Upon petitioners' request, we stayed the effectiveness of the Board's certification pending resolution of this petition for review. Accordingly, the office has been vacant since January 2, 1993, when the incumbent's term ended.

1. There is no contention that Ms. Noroozi failed to satisfy D.C.Code § 1–256(a)(1)(B) (1992), which requires a member of the ANC to reside in his or her district for at least 60 days immediately preceeding the day on which the candidate's nominating petition is filed. Indeed, at oral argument, counsel for the Board acknowledged that Ms. Noroozi satisfied this requirement.

2. Recent legislation would specifically permit the Board to declare a vacancy and hold a new election. That legislation provides that "a va-

cancy shall exist in the office of a member of an Advisory Neighborhood Commissioner when any of the following occurs:

\*    \*    \*    \*    \*    \*

(g) when the office of an ANC Commissioner from a single member district remains vacant after a general or special election, in which case the effective date of the vacancy is the date on which the commissioner's new term would otherwise begin; ...."

3 DCMR 1300.1, published in 40 D.C.Reg. at 1826–27 (March 12, 1993).

When Ms. Noroozi notified the Board that she was no longer a resident of her ANC district and that she was withdrawing from holding office, the Board, in its own words, found itself in a "limbo period, post-election/precertification," in which it had to determine whether the election could "go to the second place finisher, or, in fact, does it have to be a special election?" The Board concluded that it was required to certify the second place finisher and was without authority "not to declare a winner ... and to call a new election." We conclude that this was error.

▇▇▇ Generally, when an agency interprets its own regulations or the statute which it administers, we will defer to that interpretation as long as it is not inconsistent with the applicable statute. *Columbia Realty v. Rental Hous. Comm'n*, 590 A.2d 1043, 1046 (D.C.1991); *see also McCulloch v. Rental Hous. Comm'n*, 584 A.2d 1244, 1248 (D.C.1991). In reviewing an agency decision which interprets or applies statutory provisions, we follow the Supreme Court's two-part test established in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Columbia Realty, supra*, 590 A.2d at 1046. This requires, first, that we determine whether the meaning of the statute is clear. "Only when the statute is ambiguous does the court turn to the second part of the inquiry, which is to determine whether the agency's decision is based on a permissible construction of the statute." *Id.* (citing *Chevron, supra*, 467 U.S. at 842–43, 104 S.Ct. at 2781). Accordingly, if the language of the statute involved is clear, we do not defer to the agency's interpretation.

D.C.Code § 1–258 (1992) provides that "[t]he candidate in each single-member district receiving the highest number of votes cast in such election shall be declared the winner, except that in the case of a tie the procedures set forth in § 1–1314(c) shall govern." Although the statute provides no qualifications or exceptions to this mandate, the Board maintains that they are only required to certify a *qualified* candidate receiving the most votes.

In support of its interpretation, the Board cites § 1–256(a)(1)(A), which provides that one cannot be a "member of an Advisory Neighborhood Commission" unless one "is a registered qualified elector actually living in the single-member district from which he was selected." The Board contends that this section, "in clear and unequivocal language, defines ANC candidate qualifications." Section 1–256(a)(1)(A), however, applies to qualifications of actual *members* of the ANC,[3] and not to a candidate, which is the operative term in § 1–258 (the Board is required to certify the *candidate* receiving the most votes). Accordingly, the provisions of § 1–256 provide no support for the Board's claim that pursuant to § 1–258, it can only certify *qualified* candidates.

▇▇▇ Ms. Noroozi met all legal requirements for access to the ballot and her candidacy was never officially challenged during the challenge period. *See* D.C.Code § 1–256(b)(1).[4] The Board does not contend otherwise.[5] In short, she met all the

**3.** It provides:
(a)(1) No person shall be a member of an Advisory Neighborhood Commission unless he:
(A) Is a registered qualified elector actually residing in the single-member district from which he was elected;
(B) Has been residing in such district continuously for the 60 days immediately preceding the day on which he files the nominating petitions as a candidate as such a member; and
(C) Holds no other elected public office.

**4.** It provides:
(b)(1) Candidates for member of an Advisory Neighborhood Commission shall be nominated by a petition:
(A) Prepared and presented to the Board in accordance with regulations of the Board no later than the 60th calendar day before the date of the election in which he intends to be a candidate; and
(B) Signed by not less than 25 registered qualified electors who are residents of the single-member district from which he seeks election.

**5.** *See* D.C.Code § 1–1312(*o*) (1992) (provides for challenges by registered voters to petition for placement on ballot filed by candidates). Counsel for the Board conceded at oral argument that even though Ms. Noroozi was not a resident of the district at the time of the election, she had met all legal requirements for having her name

requirements necessary to ensure her place on the ballot and we conclude that she was therefore a candidate within the meaning of § 1–258. In reaching that conclusion we note that the virtually unanimous authority holds that words of common use are generally construed according to the natural, plain and ordinary meaning, and that where a word has a fixed technical meaning it is to be taken in that sense. FRANCIS J. MCCAFFREY, STATUTORY CONSTRUCTION § 12, at 39 (1953); *see Barbour v. D.C. Department of Employment Services,* 499 A.2d 122, 125 (D.C.1985) ("words of a statute must be construed by their common meaning and their ordinary sense") (citations omitted); *Stuart v. American Security Bank,* 494 A.2d 1333, 1338 (D.C.1985) ("words in a statute are to be construed according to 'their ordinary sense and with the meaning commonly attributed to them'") (citation omitted); *McDermott International, Inc. v. Wilander,* 498 U.S. 337, 345, 111 S.Ct. 807, 811, 112 L.Ed.2d 866 (1991) (when a statute uses a "term of art," Court will assume Congress intended it to have its established meaning); *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 249, 96 L.Ed. 288 (1952) ("where Congress borrows terms of art in which are accumulated the legal tradition and meanings of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken"). Every dictionary we have consulted defines a candidate essentially as one who seeks office. None of the definitions limit the term candidate to those who are *qualified.*[6] Here Ms. Noroozi met every legal requirement to be listed on the ballot as a candidate, and we find nothing in the governing statutes that suggests that the term candidate should be restricted in the manner advanced by the Board. Thus we conclude that the term means exactly what it says and that Ms. Noroozi was a candidate within the meaning of § 1–258.

The law requires that the Board certify the candidate receiving the highest number of votes in an ANC election. Since we are satisfied that the language of § 1–258 is clear, we conclude that there is no basis for deferring to the Board's construction of the statute.[7] *Columbia Realty, supra,* 590 A.2d at 1046 (court only addresses issue of whether agency decision is based on permissible construction of the statute if the statute is ambiguous); *see also J. Parreco & Son v. District of Columbia Rental Hous. Comm'n,* 567 A.2d 43, 45 (D.C.1989) (when interpreting a statute, the court must first look to the language of the statute; "if the words are clear and unambiguous, we must give effect to its plain meaning").[8] Thus, we conclude the Board

placed on the ballot. See note 1, *supra.* Counsel for the Board also conceded that had she not withdrawn and had she regained her residency in the district before the new term was scheduled to begin, she could have lawfully taken office when the incumbent's term expired.

6. *See, e.g.,* BLACK'S LAW DICTIONARY 206 (6th ed. 1990); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 325 (3d ed. 1986); RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 304 (2d ed. 1987).

7. At oral argument, the Board maintained that this reading of the statute could lead to absurd results. If, for example, "Julius Caesar," as a write-in candidate, received the highest number of votes, the Board fears that it would be required to certify Julius Caesar as the winner of the election. Such a concern is unfounded. D.C.Code § 1–1312(r)(3) (1992) provides that in order to be eligible for election to public office, "a write-in candidate shall be a duly registered elector and shall meet all the other qualifications required for election to the office." A "qualified elector" is defined as a citizen of the United States who resides in or is domiciled in the District of Columbia, who will be eighteen years of age on the day of the next election, and who has not been adjudged mentally incompetent. D.C.Code § 1–1302(2) (1992). Julius Caesar is, of course, not a duly registered elector, and is therefore not a legitimate write-in candidate pursuant to § 1–1312(r)(3). It follows that Julius Caesar would not be eligible for certification by the Board in the event that his name received the highest number of votes as a write-in. For the same reason, Julius Caesar could not be placed on the ballot since he could not meet the requirements of § 1–256(a)(1)(B) which limits ballot access to registered qualified electors who resided in the district "continuously for the 60 days immediately preceding the day on which he files the nominating petitions as a candidate...."

8. At oral argument, the Board emphasized the fact that Ms. Noroozi withdrew her name following the election, thereby suggesting that it could not certify her for that reason. Ms. No-

was obligated to declare Ms. Noroozi as the winner of the election since she was the candidate who received the most votes. In no event do we find any basis in the governing statutes which would permit certification of the second place finisher as the winner of the election.

Our reading of the statute produces a result that is consistent with the overwhelming majority view in American jurisdictions, also known as the "American rule," that holds that where the candidate receiving the most votes is deceased, disqualified, or ineligible, the runner-up candidate will *not* be deemed the winner of the election. According to the American rule:

> votes cast for a deceased, disqualified, or ineligible person are not to be treated as void or thrown away, but are to be counted in determining the result of the election as regards to other candidates.... The result of its application in such cases is to render the election nugatory, and to prevent the election of the person receiving the next highest number of votes.

P.V. Smith, Annotation, *Result of Election as Affected by Votes Cast for Deceased or Disqualified Person*, 133 A.L.R. 319, 321 (1941) (listing cases from 29 jurisdictions); *see also Evans v. State Election Bd.*, 804 P.2d 1125, 1130 (Okl.1991) (quoting Smith, *supra*, 133 A.L.R. at 321); 2 CHESTER J. ANTIEAU, MUNICIPAL CORPORATION LAW, § 17.24 (1992) ("a person receiving only a minority of the legal votes cast in a local government election is not to be awarded the office when the person receiving the largest vote is legally disqualified"); 3 EUGENE McQUILLAN, MUNICIPAL CORPORATION, § 12.17 (3d ed. 1990) (same); 26 AM.JUR.2D *Elections* § 293 (1966) (a "problem arises

where a deceased or disqualified candidate receives the most votes, and ... the statute provides that a candidate must receive ... the highest number of votes. In such a case, in the absence of a statute to the contrary, the result is to render the election nugatory, and to prevent the election of the person receiving the next highest number of votes"). In accordance with the great weight of authority, we conclude that § 1–258 cannot be read to permit the Board to certify as a winner a candidate who did not receive the greatest number of votes in an election.

Although the Board must certify Ms. Noroozi as the winner of the election for Commissioner of ANC 3C09, clearly she is not actually eligible to hold the office. As noted, *supra*, D.C.Code § 1–256(a)(1)(A) requires that a member of the ANC reside in the district from which she was elected. And, as Ms. Noroozi acknowledged in her letter to the Board, she no longer lives in ANC 3C09. Therefore she is not eligible to be an actual *member* of the ANC, and cannot take office. Because of her ineligibility to hold office, and since the incumbent's term expired without his being sworn in for a subsequent term,[9] the office of Commissioner in ANC 3C09 is currently vacant. This permits the Board to hold a special election in order to fill the vacancy. *See* D.C.Code § 1–257(d) ("Whenever a vacancy exists in a single-member district Advisory Neighborhood Commission, the Board shall hold a special election in the single-member district to fill the vacancy....").[10]

Concluding that the Board erred when it certified the incumbent as the winner in ANC single-member district 3C09, we re-

---

roozi did not withdraw her candidacy; rather, she withdrew from holding office. That action does not alter the fact that § 1–258 requires, without qualification or exception, that the Board certify the candidate who received the highest number of votes. Regardless of the actions taken by Ms. Noroozi after the election, she was the "candidate ... receiving the highest number of votes...." D.C.Code § 1–258.

9. Our December 30, 1992 order staying the effectiveness of the Board's certification pending the resolution of this review prevented the incumbent from being sworn in for another term.

10. Because we reverse the certification of the Board based on the Board's failure to adhere to the plain language of § 1–258 and remand to the Board to certify Ms. Noroozi as the winner of the election, we do not address petitioners' other claim on appeal, namely, that we should void the election under D.C.Code § 1–1315(b) on the basis that there was a "defect, serious enough to vitiate the election as a fair expression of the will of the registered qualified electors voting therein."

verse the decision of the Board and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

SCHWELB, Associate Judge, concurring:

Although I agree with the result reached by the majority and with much that Judge King has written, I am unable to join that part of the analysis which appears to make the result hinge on the "plain meaning" of "candidate," as that word is used in D.C.Code § 1–258 (1992). According to the majority, the word "candidate" plainly means the individual receiving the most votes, regardless of whether or not he or she is qualified to take office. According to the Board, on the other hand, § 1–258 must be read in conjunction with § 1–256(a)(1)(A), which defines the qualifications of ANC Commissioners, and thus excludes Ms. Noroozi. I suppose plainness, like beauty, is in the eye of the beholder. In my opinion, the legislature's use of the word "candidate" does not, and was not intended to, resolve the issue before us. The meaning of that term, in other words, is not plain with respect to the issue presented here.

Nevertheless, I agree with my colleagues that Mr. Espenschied could not properly be declared the winner of an election in which he was trounced. The Board adopted the theory that where the person with the most votes is disqualified, the candidate with the second highest number of votes is deemed elected. This theory recognizes no logical limiting principle, and thus inexorably leads to undemocratic and unacceptable results which the legislature could never have intended.

Mr. Espenschied, the incumbent, received 38% of the votes. Ms. Noroozi received 59.2%. A logical headline announcing the Board's resolution of this controversy is "THE LOSER WINS!" Moreover, suppose that following a bitter campaign based on major ideological differences, 99% of the voters had cast their ballots for Ms. Noroozi and only 1% for Mr. Espenschied. Under the Board's approach, Mr. Espenschied would still have become an ANC Commissioner. Surely common sense warns us to hesitate a little before reaching such a result.

On May 24, 1893—almost exactly a century ago, in a case that appears on the first page of the first District of Columbia Reporter—Justice Shepard wrote for the court that

[w]hile it is not within the judicial power, by construction, to cure defects which may render laws unjust or even oppressive, if they clearly exist; yet no statute should be so construed as to render it unreasonable, or unjust in its operation, if there be room for construction at all.

*Bush v. District of Columbia,* 1 App.D.C. 1, 8 (1893); *see also Wright v. United States,* 315 A.2d 839, 841 (D.C.1974), in which we stated, not so very surprisingly, that "absurdity is a result courts should view with disfavor." *Accord, United States v. Katz,* 271 U.S. 354, 357, 46 S.Ct. 513, 514, 70 L.Ed. 986 (1926).

I do not question our obligation to show a reasonable measure of deference to the Board's interpretation. As the court explained in *Darling v. Bowen,* 878 F.2d 1069 (8th Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1782, 108 L.Ed.2d 783 (1990), however,

[w]hile we accept as a general principle the appellants' claim that the courts must defer to an agency's construction of a statute it administers, we are also mindful that in interpreting a statute an agency and the court must avoid absurd results....

878 F.2d at 1075–76. As the majority points out, the Board's disposition of this case is in disharmony with the "American rule," which is followed by the overwhelming majority of courts in this country.

This case is not about widgets. It is not even about money. It is about the right to vote for the candidate of one's choice (or, perhaps, the right to vote against a particular candidate). More than a hundred years ago, the Supreme Court characterized the franchise as "a fundamental right, because preservative of all rights." *Yick Wo v. Hopkins,* 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220 (1886); *see also Reyn-*

*olds v. Sims,* 377 U.S. 533, 554–55, 84 S.Ct. 1362, 1377–78, 12 L.Ed.2d 506 (1964); *Harvey v. District of Columbia Bd. of Elections,* 581 A.2d 757, 758 n. 3 (D.C.1990), *rehearing denied,* 584 A.2d 55 (D.C.1991). To frustrate the apparent will of the voters is a very serious matter.

Where, as here, three electors have voted against an incumbent for every two who voted for him, a designation of that incumbent as the winner compromises the integrity of the franchise. I am confident that the legislature did not intend that the statute be construed in such a manner.