JOHN S. GULCZ, RAJMOND DUDZINSKI, RAFAL HOYPSTECKI, VINCENT J. KOWALEWSKI and JOHN JAKUBNOWSKI,

*vs.*

DELAWARE POLISH BENEFICIAL ASSOCIATION OF MATER ADMIRABILIS, a corporation existing under the laws of the State of Delaware, and DR. SIGMUND B. PAWLIKOWSKI, BOLESLAUS K. GAWINSKI, FRANK T. STUDOWSKI, PIOTR L. FRONCZKOWSKI, WACLAW W. PERZANOWSKI, STANISLAW DOMBROWSKI, JOHN H. WISNIAK, ANTONI J. KOWALSKI, FRANCISZEK A. LAZARCZYK, MARY A. JAROSZEWSKA, JOHN S. IGNATOWSKI, JOHN BACZKOWSKI, MICHAEL GROCHOWINA, BLAZEJ BAZEK, FRANK V. BIELSKI, and JOSEPH DELIKAT, its acting Directors.

*New Castle, Dec. 26, 1933.*

*Henry R. Isaacs,* for complainant.

*Philip L. Garrett* and *John J. Morris, Jr.,* of the firm of Hering & Morris, for defendants.

THE CHANCELLOR: There are three principal points presented by the complainants in this case and discussed by the solicitors for the parties. Two of the questions deal with the right to relief of some sort and the other with the nature of the relief. Inasmuch as I am of the opinion that a right to relief is not shown, this memorandum will be confined to a consideration of the two grounds upon which such right is said to rest.

1. First, were the amendments to the certificate of incorporation lawful amendments? This question as presented has two aspects which will be considered separately as follows:

(a) Were the amendments void because they establish different objects, purposes and terms of membership of the corporation from the objects, purposes and terms of membership expressed in the original charter?

The corporation was created in 1908. It was created as and still is a corporation having no capital stock. Its objects, purposes and terms of membership are described in its original charter as follows:

"To establish and maintain a mutual association for charitable and beneficial purposes, the promotion of benevolent, and fraternal action by the collection of money from applicants, and members for membership fees, dues and assessments, for the payment of weekly, monthly, quarterly, annual, total disability and death benefits or for the payment of such sums of money to the members, their families or legal representatives as may be provided for in the Certificate of membership given by the Association to each member and also the payment of all expenses incident to the maintenance, management and operation of the Association, its interests and affairs.

"To assist sick, needy or disabled members; to defray the funeral expenses of deceased members, provide for the wants of widows and orphans, and the needs of the families of deceased members, all or any part of which may be done in such manner and form and upon such terms and conditions as the by-laws shall provide, subject to the limitations contained in this Charter."

Several amendments were adopted from time to time by which this statement of the objects, purposes and terms of membership was altered. It is important to notice only the last amendment which substitutes in lieu of the original language just quoted the following:

"To establish and maintain a mutual Association for the making of insurance upon the lives of individuals, and every insurance appertaining thereto or connected therewith, and to grant, purchase or dispose of annuities, and also the payment of all expenses incident

to the maintenance, management and operation of the Association, its interests and affairs."

These quotations are from Article Third of the certificate of incorporation in its original and amended form respectively.

A comparison of the language of the article in its original and amended form reveals that the latter varies from the former in two particulars. One of these is in the matter of insurance. The original language does not express insurance *eo nomine* as among the corporate objects. But the test of whether the business of insurance was among the objects of the association cannot depend upon either the presence or absence of the word. What counts is the meaning of the words actually employed to express the thought. Reading the language as it appears in the first two paragraphs of the original article, it is perfectly apparent that the business of insurance was among the original stated objects and purposes of the corporation's existence. It was what appears to be classified in this State as fraternal insurance. The article as amended changes the type of insurance business conducted by the corporation from that of fraternal to mutual insurance. The distinction is more or less technical. It exists however in this State. The change from a fraternal to a mutual insurance association has not, as the evidence shows, altered in any way the type of policies written by the association. Its business continues to be conducted now exactly as it was before. The only effect of the change in this particular is that the association's insurance business, now that it is classified as a mutual company, is subject to the supervision of the Insurance Commissioner, whereas if it had remained a strictly fraternal affair its business would be, as it was until the amendment, exempt from such supervision. The reason for the change appears to be that the association was unable to conduct its insurance business in certain states unless it was subject to the supervision of the domiciliary commissioner. The only effect of the change from a fraternal to a

mutual company has been the wholesome one of adding a regulatory supervision over its business. From the evidence it appears that the absence of such supervision during the years when the association operated as a "fraternal" is to be regretted. The change has not altered in any sense the objects and purposes of the corporation in its insurance enterprise. This is clearly so, unless it can be said that the new purpose, expressed in the amendment "to grant, purchase or dispose of annuities," constitutes a new one. Even if it be so, it is of no moment, because an annuity contract as here referred to is, I apprehend, based upon the same fundamental principles as is an insurance contract, and the power to grant annuities is in essence but the power to grant the ordinary insurance contract in the reverse, so to speak.

But, it is said, the amendment changes the qualifications exacted as a condition of membership. It does do that, for whereas by the original certificate members had to be of "Polish descent, baptized in the Roman Catholic faith and * * * in good standing and membership in the Ruthenian, Greek or Roman Catholic Church," now under the amendment those conditions of membership need not be met. While that is so, it does not follow that the amendment is an unlawful one. There is no provision in the law which indicates a purpose with respect to membership corporations, that the qualifications necessary to membership when originally defined can never be altered. The power of amendment of the charter, when exercised in the manner provided by the statute, may be employed to change the qualifications defining eligibility for membership. The business of this corporation appears primarily to have been, from the beginning, the business of insurance in the so-called fraternal form. The general charitable and beneficial purposes referred to in the original charter were from the beginning merely paper purposes and found no expression in practical action. Insurance was its business. That business, by the original charter, was

to be confined in its operation only among certain racial and religious groups. As the racial origin or religious beliefs of insured persons can have no rational bearing upon their desirability as insurance risks, I can see no violent departure from the purposes of the corporation in an amendment of its charter which strikes out these rather irrelevant racial and religious limitations upon the character of persons whom it is permitted to insure.

The result of the foregoing is that so far as the objects, purposes and terms of membership of the corporation are concerned, the amendment has introduced no radical change in matters that are fundamental. I need not therefore inquire what would be the result if the changes had been of a character different from what they are.

(b) It is next contended under this head that the amendment is invalid because the section of the *General Corporation Law* (*Section* 26) under which it purports to have been adopted is void.

It is conceded that the procedure of the section as applicable to the amendment of charters of non-stock corporations was faithfully followed.

But the section, as applied to such corporations, is said to be void because it is in violation of that clause of the *Constitution of the United States* (*Const. Amend.* 14) which provides that no person shall be denied the equal protection of the laws. The argument in support of this contention is that in the case of a stock corporation an amendment of the certificate of incorporation cannot be made under *Section* 26 (*Revised Code* 1915, § 1940, as amended by 36 *Del. Laws, c.* 135, § 12) without the consent of its real owners, viz., the stockholders, whereas in the case of a non-stock corporation, consent of its real owners, viz., the members, to an amendment is not required; and therefore, not to allow the members of the latter a voice in the matter of an amendment as the stockholders are allowed in the case of the former, is a denial of the equal protection of the laws. Of course, it is not true that all stockholders of a stock com-

pany are allowed to vote on all amendments to the charter. What stockholders may vote on such questions is dependent on the language of the certificate of incorporation defining the voting rights of stock and the character of the proposed amendment. So that the premise does not exist from which the solicitor for the complainants proceeds in making his present contention, viz., that in the case of a stock corporation all the members or stockholders are always allowed to vote on an amendment of its charter.

I do not feel disposed to dwell more upon the present contention. It appeals to me as wholly without merit. It is enough to say that when a state extends the privilege to persons of incorporating companies under a general act, a privilege that is imposed upon no one and is at all times optional in its enjoyment, it is far from a denial of the equal protection of the laws for the state to say to one group, "if you incorporate as one type of corporation certain mechanics shall apply to you," and to another group, "if you incorporate as another type of corporation certain other mechanics shall apply to you." It is not a question of equal protection of the laws. It is rather a question of the terms and conditions upon which a voluntarily accepted privilege may be enjoyed.

2. It is next finally contended that the directors and officers of this corporation are without lawful title to their respective offices. This question arises because of an alleged illegality in the action of the 1928 convention in fixing the meeting date of the next convention for three years later, viz., in September, 1931. The charter provided that each convention should fix the next meeting date. But it also provided that the conventions should meet biennially. When, therefore, the convention of 1928 fixed September, 1931, as the next meeting date, it violated the biennial scheme. Upon discovering the error in this regard, the so-called Central Government of the association took steps to repair the mistake. Paragraph 2 of Article 3 of the by-laws provided as follows:

"In case a convention for any reason whatever failed to appoint the time and place of the ensuing Convention, the same shall be convened by the Central Government."

In obedience to this mandate of the by-laws the Central Government called a convention for September, 1930, to elect what is called a "Central Goverment," by which is meant directors. The describing of this convention as a "special" one is of no moment. The call for it disclosed, among its purposes, that it was to act as the regular convention which should have been fixed by the convention of 1928 under the biennial scheme of the charter and the date for which that convention had failed to fix. No one objected to the regularity of that call. Most of the complainants attended the convention, participated in it and some of them accepted office as a result of election thereat.

I hold that that convention was a legal one duly convened by the Central Government under the power conferred by paragraph 2 of article 3 of the by-laws, above quoted. If it was, the title to office of the present directors and officers is good. It is proper therefore to conclude this memorandum at this point without examining the other contentions raised and discussed upon the assumption that the 1930 convention was an illegal one.

Decree dismissing the bill with costs on the complainants.