Ata A. FARAHPOUR, Appellant,

v.

DCX, INC., Appellee.

Supreme Court of Delaware.

Submitted: Dec. 21, 1993.
Decided Jan. 21, 1994.

George E. Evans, Wilmington, and John M. Coles (argued), Washington, DC, for appellant.

Francis J. Trzuskowski, Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, and Pierre J. LaForce (argued), Wilkinson, Barker, Knauer & Quinn, Washington, DC, for appellee.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

WALSH, Justice:

█ This matter is before the Court as the result of the certification of two questions of law pursuant to Article IV, Section 11(9) of the Delaware Constitution and Supreme Court Rule 41. The questions of law have been certified by the District of Columbia Court of Appeals ("the Court of Appeals"), the highest court of that jurisdiction.[1] In the exercise of our discretion to consider questions of law where there are important and urgent reasons for immediate determination, and in view of the fact that the underlying dispute is controlled by Delaware corporate law, we have accepted both certified questions for determination.

The certified questions are the following:

1. Whether, under Delaware law, a corporation, incorporated in the State of Delaware, may make fundamental changes in its structure and purposes, through amendment of its articles of incorporation, pursuant to resolutions passed by

---

1. By amendment effective April 12, 1993, the certification process contained in Article IV, § 11(9) was extended to any Article III federal court and the highest appellate court "of any other state." The definition of "State" in the Delaware Code specifically includes the District of Columbia. 1 Del.C. § 302(18). Accordingly, we interpret the language of Article IV, § 11(9) as including the District of Columbia.

the corporation's board of directors with the result that:

(a) a for-profit, stock corporation is converted into a nonprofit, nonstock, mutual benefit corporation;

(b) the nonprofit, nonstock, mutual benefit corporation is subsequently re-converted into a for-profit, stock corporation;

(c) the newly-authorized stock of the re-converted corporation is distributed to the voting members of the corporation only; and

(d) two classes of nonvoting members are eliminated, along with their rights to receive a distribution of the corporation's assets in the event of a dissolution of the corporation?

2. Whether the changes in (a)–(d) above may be accomplished without notification to the corporation's nonvoting members, without a dissolution of the nonprofit corporation, without a merger or consolidation, and without the corporation providing anything of value to the members whose rights have been extinguished?

■ To the extent that the certified questions pose generic or theoretical inquiries requiring no factual or circumstantial analysis, we believe they may be answered in the affirmative, *i.e.,* the General Corporation Law of Delaware (the "GCL") does authorize a corporation to make the changes outlined in the questions. We note, however, that the parties dispute certain basic facts contained in the certification and have made numerous additional factual assertions which may affect the application of the generic standards herein expressed to the equitable rights of the parties. Thus, while this Court is able to answer the questions certified, our rulings should not be construed as necessarily dispositive of the claims asserted by the corporation's nonvoting members.

**I**

The following undisputed facts are set forth in this Court's order accepting certification:[2]

a. Appellee, DCX, Inc., is a Delaware corporation doing business in the District of Columbia under the trade name "Diamond Cab." Diamond Cab operates taxicabs in the District of Columbia.

b. Appellant, a cab driver, was associated with the corporation periodically from 1972 to 1989.

c. Appellee was incorporated in 1926 in the state of Delaware as a for-profit, stock corporation, under the name Independent Taxicab Owners Association, Inc. ("ITOA").

d. In 1928, appellee amended its articles of incorporation and became a nonprofit, nonstock corporation, with a purpose to operate for the mutual benefit of its members.

e. Pursuant to the 1928 amendment, members of the nonprofit, nonstock corporation were the members of the corporation in good standing at the time of the amendment, and such other taxicab owners and operators as shall be admitted under payment of the initiation fee and dues provided by the bylaws.

f. Beginning in 1987, appellee's board of directors, by resolution, amended its articles of incorporation three times, with the result that by 1990, ITOA was transformed into a for-profit, stock corporation named DCX, Inc., with its stock ownership limited to full members, each of whom received dividends in 1989, 1990 and 1991, paid from the corporation's checking account.

i. Through the first amendment of its articles of incorporation in 1987, appellee's board of directors created three classes of membership: full, limited and associate, and set initiation fees of $2,500.00, $100.00 and $4.00 respectively.

The amendment provided that only full members would be entitled to vote.

---

**2.** For purposes of this certification proceeding, Ata Farahpour, the appellant before the Court of Appeals, was designated as appellant and DCX, Inc., the appellee before the Court of Appeals, was designated as appellee in this Court.

The amendment also provided for the distribution of assets to all members upon dissolution of the corporation, pursuant to which an associate member would have received $16.00.

ii. Through a second amendment of its articles of incorporation in 1989, appellee made three additional changes in its corporate structure: it changed its name to Diamond Cab of D.C., Inc.; it deleted language defining the corporation as a mutual benefit corporation, thereby repealing the membership provisions of the 1987 amendments, including the distributive rights; and it empowered the board of directors to issue 400 shares of stock at $0 par value.

iii. The last amendment of the articles of incorporation, in 1990, changed the corporation's name to DCX, Inc.

Although the facts underlying the certification provide a sufficient chronology for consideration of the certified questions, as previously noted, in briefing the parties have made additional factual assertions, some of which are in sharp dispute. Since the certification process requires that "facts material to the issue" not be in dispute, Supr.Ct.Rule 41(b), we give no consideration to factual assertions of the parties which are supplemental to, or at variance with, the facts outlined above.

## II

■ Before addressing the specific questions posed by the certification, certain general observations are appropriate. A Delaware corporation can "make fundamental changes in its structure and purposes" through amendments to its certificate of incorporation. Section 102(a) of the GCL provides that the certificate of incorporation shall set forth, *inter alia*, the purposes and capital structure of the corporation. Once adopted and properly filed, the certificate may be amended with the scope of the amendments unlimited, so long as the added provision "would be lawful and proper to insert in an original certificate filed at the time of the filing of the amendment." 8 *Del.C.* § 242(a). Of course, the mechanics of the amendatory procedures, as set forth in Section 242, must be followed for the process to be effective and complete.

Regarding the role of the corporation's board of directors in the amendment process, the GCL is equally clear. Normally, a proposed amendment to the certificate of incorporation must be submitted to a vote of the corporation's stockholders entitled to vote thereon. 8 *Del.C.* § 242(b)(1)–(2). There are two exceptions which are pertinent to the present inquiry. First, if a corporation has not yet received payment for its shares, the board of directors may amend the certificate by board action alone. 8 *Del.C.* § 241. Second, if a corporation has no capital stock, the "governing body" may approve a certificate amendment, on its own, in a two-step process by (1) adopting "a resolution setting forth the amendment proposed and declaring its advisability," and (2) approving the amendment by majority vote of the members of the governing body at a subsequent meeting held between 15 and 60 days after the meeting at which the resolution was adopted. 8 *Del.C.* § 242(b)(3).

Against this background of general principles, we separately address the four scenarios which constitute the first certified question.

### A.

### CONVERSION FROM A FOR–PROFIT, STOCK CORPORATION TO A NONPROFIT, NONSTOCK CORPORATION.

The parties do not dispute that a for-profit, stock corporation may be converted into a nonprofit, nonstock, mutual benefit corporation. This agreement is dictated by Section 242's grant of board power of amendment, including the right to change its corporate power and purposes, § 242(a)(2), to reclassify its authorized capital stock, § 242(a)(3), and to create new classes of stock, § 242(a)(5). These designated powers encompass the right to make the change from a for-profit stock corporation to a nonprofit, nonstock mutual benefit corporation, a status permissible at the time of the filing of the original certificate of incorporation.

The preamble to the first certified question, however, posits an amendment by board resolution or director action alone, a course not permissible for a corporation with capital stock. 8 *Del.C.* § 242(b)(1). The single exception for director-alone approval is where the corporation has not yet received payment for any of its capital stock, 8 *Del.C.* § 241(a), an exception which presumably does not apply here. However, any theoretical uncertainty concerning director authority appears moot. The 1928 amendment of ITOA's certificate of incorporation, which converted it to a nonprofit, nonstock corporation, recites that it was approved by the holders of a majority of stock. Thus, it would appear that there was full compliance with Delaware corporate law in the conversion of ITOA from a for-profit corporation to a nonprofit, nonstock corporation.[3]

### B.
### CONVERSION FROM A NONPROFIT, NONSTOCK CORPORATION BACK INTO A FOR–PROFIT, STOCK CORPORATION.

In 1989, ITOA changed its name to Diamond Cab of D.C., Inc., and altered its corporate status, changing from a nonprofit, nonstock corporation back into a for-profit stock corporation. The appellant contends that Delaware law does not permit such a radical change without express authorization. As

with the preceding scenario, the GCL contains no restrictions precluding this type of conversion. Nor is there any requirement that the members of the nonstock corporation approve a conversion amendment unless the certificate of incorporation requires such a vote. 8 *Del.C.* § 242(b)(3).[4]

Section 242(b)(3) permits amendment to be effectuated upon vote of the "governing body" of a nonstock corporation, the equivalent of the board of directors of a stock corporation. In the absence of a certificate requirement, a vote by members generally is not mandated. *See Gulcz v. Delaware Polish Beneficial Ass'n,* Del.Ch., 169 A. 595 (1933) (no member vote required under predecessor to § 242). Additionally, § 257 of the GCL allows for conversion from a nonprofit to a for-profit entity through a merger as long as the nonprofit organization is not charitable in nature § 257(e).[5] Since DCX has never been a charitable organization, nothing in § 257, either explicitly or implicitly, prohibits the change from a nonprofit to a for-profit entity through certificate amendment. *See Stevens Bros. Foundation Inc. v. Commissioner,* 8th Cir., 324 F.2d 633, 645 (1963), *cert. denied,* 376 U.S. 969, 84 S.Ct. 1135, 12 L.Ed.2d 84 (1964). Finally, it should be noted that the Third Circuit Court of Appeals, applying Delaware law, has held that a nonprofit nonstock corporation may amend its certificate

---

**3.** The 1928 Conversion of IOTA occurred prior to enactment of § 242. The answer would be the same, however, under the statutory standard then in place, 35 Del.Laws Ch. 85 § 10 (1927).

**4.** 8 *Del.C.* § 242(b)(3) provides:

(3) If the corporation has no capital stock, then the governing body thereof shall adopt a resolution setting forth the amendment proposed and declaring its advisability. If at a subsequent meeting, held, on notice stating the purpose thereof, not earlier than 15 days and not later than 60 days from the meeting at which such resolution has been passed, a majority of all the members of the governing body shall vote in favor of such amendment, a certificate thereof shall be executed, acknowledged, filed, recorded, and shall become effective in accordance with § 103 of this title. *The certificate of incorporation of any such corporation without capital stock may contain a provision requiring any amendment thereto to be approved by a specified number or percentage of the members or of any specified class of members of such corporation in*

which event only 1 meeting of the governing body thereof shall be necessary, and such proposed amendment shall be submitted to the members or to any specified class of members of such corporation without capital stock in the same manner, so far as applicable, as is provided in this section for an amendment to the certificate of incorporation of a stock corporation; and in the event of the adoption thereof, a certificate evidencing such amendment shall be executed, filed, acknowledged, recorded and shall become effective in accordance with § 103 of this title. (emphasis added).

**5.** 8 *Del.C.* § 257(e) provides:

(e) Nothing in this section shall be deemed to authorize the merger of a charitable nonstock corporation into a stock corporation, if the charitable status of such nonstock corporation would thereby be lost or impaired; but a stock corporation may be merged into a charitable nonstock corporation which shall continue as the surviving corporation.

to authorize the issuance of stock. *Plechner v. Widener College, Inc.,* 3rd Cir., 569 F.2d 1250 (1977).

■ We conclude, therefore, that Delaware law authorizes change from a nonprofit, nonstock mutual benefit corporation into a for-profit stock corporation without the vote of its members. Accordingly, this portion of the certified question is answered in the affirmative.

## C.

### ISSUANCE BY THE RECONVERTED CORPORATION OF NEWLY-AUTHORIZED STOCK SOLELY TO VOTING MEMBERS OF THE CORPORATION.

As a matter of legal authority, it is clear that a board of directors may issue stock to whomever it chooses so long as the constitutionally required consideration is received. *See* 8 *Del.C.* § 151–53. Such issuance is normally accomplished by board resolution and thus no amendment to the certificate is necessary unless the stock being issued is not yet authorized by the certificate.[6]

■ If the question posed is whether a Delaware corporation may amend its certificate of incorporation by board resolution with the result that it issues stock to certain persons, the answer is a qualified "Yes," depending on the structure of the corporation at the time of the amendment. If the subject corporation is a stock corporation with some paid-for shares outstanding, it cannot amend its certificate by board action alone under Section 242(b)(1). Of course, if the stock corporation has not yet received payment for any of its stock, it can amend its certificate under Section 241(a) by vote of the directors alone. If the subject corporation is

a nonstock corporation, it may amend its certificate by a resolution and vote of its governing body to become a stock corporation, pursuant to Section 242(b)(3), which can then issue stock as it chooses.

## D.

### ELIMINATION OF TWO CLASSES OF NONVOTING MEMBERS ALONG WITH THEIR RIGHTS TO RECEIVE A DISTRIBUTION OF ASSETS IN THE EVENT OF DISSOLUTION.

In addressing this question, we again assume that the subject corporation is a nonstock corporation since the reference is to classes of "members," not "stockholders." Under this assumption, the amendment in question could be approved without a vote of the members, voting or nonvoting, so long as the governing body of the corporation adheres to the procedures set forth in Section 242(b)(3).[7] We also assume the inquiry concerns the elimination of the "classes" of members, along with any rights attendant upon dissolution of the classes, not with the elimination of members themselves.

■ Section 102(a)(4) provides that "[t]he conditions of membership of [nonstock] corporations shall likewise be stated in the certificate of incorporation or the certificate may provide that the conditions of membership shall be vested in the by-laws." Again, if it be assumed that there are no certificate provisions otherwise providing, Section 242(b)(3) permits amendments to the certificate, including conditions of membership, without the approval of a class of members, even where such amendments are contrary to the interests of the affected class. By contrast, and significantly, Section 242(b)(2) expressly

6. The 1989 certificate of amendment for IOTA states that "the Board of Directors of the Corporation are [sic] hereby empowered to authorize the issuance of four hundred (400) restricted shares of its common stock without par value." This provision does not serve to actually issue the stock nor does it specify who is the receive the stock. We assume the stock was issued only to voting members although the resolution issuing the stock is not included in the appendices filed with this Court.

7. Section 242(b)(3) provides in pertinent part:

The certificate of incorporation of any such corporation without capital stock may contain a provision requiring any amendment thereto to be approved by a specific number or percentage of the members or of any specified class of members of such corporation....

Since neither the certified questions nor the statements of facts suggest the existence of such a discretionary certificate provision, we assume that the members are bound by the alternative amendatory process set forth in Section 242(b)(3).

provides that a class of stockholders is entitled to a class vote on a proposed amendment "whether or not [the class is] entitled to vote thereon by the certificate of incorporation" if the amendment adversely affects the rights of the class. The contrasting provisions reflect a legislative intent to provide fewer voting rights, of pure statutory origin, to members of nonstock corporations in the adoption of amendments to the certificate of incorporation. In sum, such members have neither a right to vote on an amendment generally nor a right to vote on an amendment as a class member unless the certificate of incorporation provides otherwise.

A secondary issue under the inquiry concerning the elimination of membership involves the entitlement by "eliminated" members to the assets in dissolution. The 1989 amendment to Article Fourth of the ITOA certificate eliminated the membership criteria previously set forth therein. That amendment, coupled with the Article Tenth change eliminating the provisions detailing how assets would be distributed upon dissolution, effectively eliminated nonvoting members and their right to share in dissolution assets. But these changes appear to have been necessary to transform the entity from a nonstock corporation to a stock corporation. There is no vested right to share in the assets of a corporation prior to dissolution or the declaration of a nonstock dividend. *See Coyne v. Park & Tilford Distillers Corp.,* Del.Supr., 154 A.2d 893, 897–98 (1959); *Bryan v. Aiken,* Del.Supr., 86 A. 674, 684 (1913); 8 *Del.C.* § 242(a)(4). From a theoretical standpoint, loss of rights to receive assets in dissolution would be a natural consequence of loss of membership status. It would thus appear that there is no legal or statutory bar to the elimination of membership with the consequent inability of such members to share in the assets upon dissolution.

The parties dispute the fairness of the 1989 amendments, but in the context of the corporation's legal authority to effectuate the certificate amendment, the answer to the certified question must be in the affirmative. The equitable aspect of this transaction will be hereafter considered.

## III

We next address the second basic inquiry, *viz.,* whether the certificate changes outlined above may be accomplished without: (1) notification to the corporation's nonvoting members, (2) dissolution of the nonprofit corporation, (3) merger or consolidation and (4) providing anything of value to the member whose rights have been extinguished. To the extent that any of the certificate changes can be accomplished by the amendatory process expressly permitted under one section of the GCL, specifically Section 242, the doctrine of independent legal significance provides that such action will not be tested by compliance with other sections of the GCL. *See, e.g., Orzeck v. Englehart,* Del.Supr., 195 A.2d 375, 378 (1963). Thus, a nonprofit, nonstock mutual benefit association such as IOTA could be reconverted into a for-profit stock corporation without dissolution (and attendant distribution of assets), merger, consolidation or compensation to affected members.

The question of whether nonvoting members are entitled to notice of amendatory actions is, by analogy, controlled by the Section 222(b) standard for stockholders. That section provides that "the written notice of any meeting shall be given not less than 10 nor more than 60 days before the date of the meeting *to each stockholder entitled to vote* at such meeting." (emphasis added). Thus, there is no statutory requirement that notice be given, either before action is taken or afterwards, to nonvoting members, or, in the case of corporations with stock outstanding, to stockholders without entitlement to vote.

The focus of the certified questions is the authority *vel non, i.e.* the legal entitlement of a corporation to enact certain certificate amendments under Delaware law. Our answers are necessarily a narrow response to the questions framed. Because the limited factual basis for the questions suggests that a minority or special class of members are disputing the exercise of corporate power by a larger voting class, we add the following caveat to our answers. Strict adherence to the procedures authorized by particular provisions of the GCL does not

insure that the result will receive judicial approval in litigation initiated at the behest of disgruntled members or shareholders. The use of the corporate machinery, even in full compliance with Delaware law, does not insulate corporate management or directors from claims of inequitable conduct. *Schnell v. Chris–Craft Indus., Inc.,* Del.Supr., 285 A.2d 437 (1971). Where fiduciary duties arising from management control are implicated, judicial scrutiny may extend to the purpose for which an otherwise lawful course was undertaken and the result achieved. *Condec Corp. v. Lunkenheimer Co.,* Del.Ch., 230 A.2d 769, 776 (1967). Where inequitable conduct is established, a court will act to correct the inequity. *Rabkin v. Phillip A. Hunt Chem. Corp.,* Del.Supr., 498 A.2d 1099 (1985).

With the qualification noted, the certified questions are answered in the AFFIRMATIVE.