**DCX, INCORPORATED, Petitioner,**

v.

**DISTRICT OF COLUMBIA TAXICAB COMMISSION, Respondent.**

**Nathan H. PRICE, et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA TAXICAB COMMISSION, Respondent.**

**DCX, Incorporated, Intervenor.**

**Nos. 96–AA–313, 96–AA–314.**

District of Columbia Court of Appeals.

Argued Oct. 28, 1997.

Decided Jan. 22, 1998.

Pierre J. LaForce,,Washington, DC, for petitioner/intervenor, DCX, Inc.

Brian W. Shaughnessy, Washington, DC, for petitioners Price, May and Agyemfra.

Martin B. White, Assistant Corporation Counsel, with whom Jo Anne Robinson, Interim Corporation Counsel, and Charles L.

Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before STEADMAN and RUIZ, Associate Judges, and RANKIN, Associate Judge of the Superior Court *.

RANKIN, Associate Judge:

This appeal involves two petitions for review of a decision of the District of Columbia Taxicab Commission Panel on Adjudication (hereinafter, the Commission),[1] arising out of the corporate reorganization of DCX, Incorporated, a taxicab company incorporated in the state of Delaware and operating in the District of Columbia under the trade name "Diamond Cab." Following the reorganization, Diamond terminated its relationship with certain drivers who had tried, unsuccessfully, to prevent the reorganization. Three of the drivers,[2] petitioners in No. 96–AA–314, filed complaints with the Taxicab Commission regarding the actions of Diamond's management, thereby initiating the proceedings that gave rise to the present appeals. A hearing panel convened by the Commission found, *inter alia,* that the corporate reorganization complied with the laws of Delaware and did not violate the rights or interests of the drivers, and, moreover, that Diamond terminated its relationship with the drivers based on proof of the drivers' breach of their agreement. The Commission also found, however, that although the decision to terminate the drivers was justified by evidence of misconduct, thus lawful, Diamond had violated two requirements of D.C.Code

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (1995).

1. D.C.Code §§ 40–1707(b)(2)(H) and 40–1709(b) establish a two-stage administrative adjudicative process for public and intraindustry complaints. The first stage consists of a hearing before a three-member hearing panel drawn from the Commission's Panel of Adjudication and comprised by two public and one industry representative who are selected by the Chairperson of the Taxicab Commission. The hearing panel's decision (Opinion and Order) can be appealed to the Commission's full Panel on Adjudication. The full panel then issues its decision via a Final Opinion And Order On Notices Of Appeal. This opinion constitutes the final decision by the D.C. Taxicab Commission, and it can be appealed to this court.

2. The three drivers are Nathan H. Price, III, David K. Agyemfra, and John E. May. They shall be referred to hereafter collectively as the Price petitioners. A fourth driver, Ata A. Farahpour, was sued by Diamond in the Superior Court on a complaint for injunctive relief, based on Farahpour's activities in organizing and leading the resistance to the corporate reorganization. The Superior Court granted the injunction, rejecting Farahpour's claim that the reorganization was illegal. The decision was affirmed in a Memorandum Opinion and Judgment. *See Farahpour v. DCX, Inc.,* No. 92–CV–505 (D.C. Nov. 2, 1994). Before issuing the opinion in that case, this court certified a number of questions of law to the Delaware Supreme Court, and adopted that court's opinion, *Farahpour v. DCX, Inc.,* 635 A.2d 894 (Del.1994), in our Memorandum Opinion and Judgment.

§ 40–1714(h)[3] when it summarily cut off the drivers' participation in the company's sinking fund[4] without first giving twenty days notice to the drivers, in writing, and twenty days notice to the Superintendent of Insurance, and the Office of Taxicabs[5]. In deciding sanctions for these violations, the hearing panel looked to D.C.Code § 40–1715(d), which provides: "(a)ny violation of any regulation *or requirement* issued or ordered pursuant to section 40–1714 ... shall be subject to a civil fine not to exceed $500.00." (emphasis added). In the case of each driver, the hearing panel imposed a $500.00 fine for the failure to notify the driver and another $500.00 fine for the failure to notify the Superintendent of Insurance and the Office of Taxicabs. In addition, the hearing panel found a new violation for each day that the drivers were cut off from the sinking fund.[6] The cumulation of fines totaled $18,000.00.

## I.

The Price petitioners contend that the Commission did not consider their argument that Diamond's corporate reorganization breached its fiduciary relationship with them. They conceded at oral argument, however, that this issue was neither briefed nor argued below; thus, we shall not consider it here. "[W]e do not consider claims raised for the first time on appeal." *Smith v. Police and Firemen's Retirement and Relief Board,* 460 A.2d 997, 999 (D.C.1983).

## II.

Diamond's challenge to the Commission's interpretation of the penalties allowed by

3. D.C.Code § 40–1714(h) reads, in pertinent part:
 "[n]o bond or policy of insurance ... may be canceled unless not less than 20 days notice of cancellation or termination has been provided to the insured in writing, and notice of intent to cancel has been filed with the Superintendent and Office not less than 20 days prior to the date of cancellation or termination...."

4. The Adjudication Panel's Opinion and Order of October 21, 1993, explains that Diamond maintains a type of liability insurance coverage for its drivers known as a "sinking fund." *See* D.C.Code § 40–1715. Drivers who participate in the company's sinking fund make weekly payments to the company for insurance coverage and are issued stickers which are affixed to the windshield of the taxi. The sticker is valid for

D.C.Code §§ 40–1714(h), 40–1715(d) has some merit. Diamond concedes that it failed to provide the notice required by law, but avers that the Commission's imposition of two fines premised on two separate violations of section 40–1714, misconstrues the statute and constitutes multiple punishment for one illegal act. Likewise, it contends that the Commission's finding of a new violation for each day that the drivers were without liability coverage constitutes an illegal cumulative penalty not authorized by the statute. Diamond asserts that a proper reading of the statute limits its liability to, at most, $1,500.00; the aggregate of the $500.00 maximum fine for each notification violation multiplied by three, for each petitioner (driver).

The issue has two components: (1) whether D.C.Code § 40–1714(h) can reasonably be read to have two requirements that are separately enforceable by fines of up to $500.00 each under D.C.Code § 40–1715(d), and (2) whether these two D.C.Code provisions can be read to allow cumulative penalties. We answer the first question in the affirmative and the second in the negative.

### The standard of review

In reviewing agency decisions interpreting statutory provisions, we 'first ... must determine whether the meaning of the statute is clear.' *Columbia Realty Venture v. District of Columbia Rental Hous. Comm'n,* 590 A.2d 1043, 1046 (D.C.1991).

one week. Diamond cut off the Price petitioners' participation in its sinking fund upon their termination simply by refusing to issue a valid sticker.

5. The Commission did not explain its decision to treat the requirement of notice to the Superintendent of Insurance and to the Office of Taxicabs as one requirement rather than two.

6. Following Diamond's notice to the drivers that they were no longer allowed to drive under Diamond's colors, the Price petitioners complained to the Superintendent that they had been denied the statutory twenty day notice. The Superintendent intervened and caused Diamond to issue the drivers valid stickers for the twenty day period. The Price petitioners were without coverage for a total of six days.

If it is, that generally ends the inquiry. *Id.* If the statutory meaning is ambiguous, however, the question becomes

'whether the agency's decision is based on a permissible construction of the statute.' *Id.* When 'a statute is susceptible of more than one interpretation, this court will defer to the interpretation given by the agency charged with administering the statute, unless the agency's interpretation is unreasonable in light of the prevailing law, inconsistent with the statute, or plainly erroneous.'

*Avis Rent–A–Car v. District of Columbia,* 679 A.2d 492, 493 (D.C.1996) (*quoting Thomas v. District of Columbia Dep't of Employment Servs.,* 547 A.2d 1034, 1037–38 (D.C. 1988)). The court will give "considerable weight to the interpretation of a statute by the agency responsible for administering it, but such deference is appropriate only 'as long as that interpretation is reasonable and not plainly wrong or inconsistent with (the) legislative purpose.' " *Council of the District of Columbia v. Clay,* 683 A.2d 1385, 1389 (D.C.1996) (*quoting Coumaris v. District of Columbia Alcoholic Beverage Control Bd.,* 660 A.2d 896, 899 (D.C.1995)).

 Our analysis must also consider that the statutory fines at issue are penal in character, levied for Diamond's failure to give notice of insurance cancellation as required, thereby compelling obedience to the statute in contrast to providing relief to an injured party. "A court may not interpret a penal statute so as to increase the penalty which it authorizes when such an interpretation can be based on no more than a guess as to what the legislature intended." *Riggs National Bank v. District of Columbia,* 581 A.2d 1229, 1262 (D.C.1990) (citing cases). The rule of strict construction of penal statutes requires "(i)n case of doubt concerning the severity of the penalty prescribed by a statute, construction will favor a milder penalty over a harsher one." Sutherland Stat. Const. § 59.03, at 12 (5th Ed.).

Utilizing these principles, we now turn to an analysis of D.C.Code §§ 40–1714(h), 1715(d).

*(a) The finding of two separate requirements by the Commission.*

D.C.Code § 40–1714(h) requires that an insurance provider give the insured a twenty-day advance notice, in writing, of cancellation of coverage. The practical effect of the notice requirement is that a driver shall have twenty days after receiving notice of the impending loss of insurance coverage to make new arrangements for coverage. It is illegal to operate a taxi in the District of Columbia without insurance, D.C.Code § 40–1715(d)("It shall be unlawful to operate any vehicle subject to the provisions of § 40–1714 and this section unless the vehicle is insured...."). The clear and unequivocal requirement of twenty days advance notice to the driver protects the driver from sudden loss of coverage which would, in turn, bar the operation of the taxi. Section 40–1714(h) also requires the insurer to file with the Superintendent of Insurance and the Office of Taxicabs, twenty days notice of intent to cancel a driver's coverage prior to the date of cancellation.[7] This requirement permits the agencies with responsibility for regulating the taxi industry to carry out the obligation of "insuring that all rules, regulations, and laws specifically relating to taxicabs be vigorously and fairly enforced...." D.C.Code § 40–1702.

 A plain reading of the statutory language shows that an insurer must meet two separate requirements: (1) notification to the insured and (2) notification to the regulatory agencies, both notices to be provided twenty days prior to cancellation or termination. D.C.Code § 40–1715(d) states that "any violation of any regulation or requirement issued or ordered pursuant to section 1714 ... shall be subject to a civil fine not to exceed $500.00." It follows, as a matter of plain meaning, that where two notice requirements have been violated, two fines may be imposed. "The primary rule of statutory construction is that the intent of the legislature is to be found in the language which it has used." *Parreco and Son v. D.C. Rental Housing Comm'n,* 567 A.2d 43, 45 (D.C.1989). We conclude, therefore, that the Commission's imposition of a fine for Dia-

7. Unless the termination is for nonpayment of the coverage.

mond's action in the immediate termination of the Price Petitioners from the sinking fund and a separate fine for its failure to file advance notice of termination of coverage with the regulatory agencies is an interpretation of the code sections that is fully consistent with the legislative intent as expressed in the plain language of the statute. Moreover, because multiple requirements are plainly within the statute's wording, a finding of multiple fines is not an increase in penalty based upon a guess of legislative intent so as to offend the rule of strict construction of penal statutes. *See Riggs National Bank v. District of Columbia, supra,* 581 A.2d at 1262. The Commission's ruling in this regard shall be upheld.

*(b) The Commission's finding of cumulative penalties within the statute.*

██ In contrast to its decision to impose multiple fines as discussed above, the Commission did not explain its source of presumed authority to assess cumulative fines against Diamond for each day that it was in violation of section 40–1714(h). Although it proceeded as if the statute explicitly allowed cumulative fines, in fact, the statute does not mention cumulative fines; rather, it states that "(a)ny violation ... of section 40–1714 ... shall be subject to a civil fine *not to exceed $500.00." (emphasis added).* A plain reading shows that any violation of section 40–1714 is subject to a fine of no more than $500.00. Thus, an interpretation increasing the per violation ceiling would be inconsistent with the statute's language.[8] Notably, the District of Columbia City Council and the D.C. Taxicab Commission have drafted specific provisions that provide per day fines.[9] The Commission's interpretation in this regard is inconsistent with both the letter and intent of the statute; therefore, it must be reversed.

8. Such an interpretation would also be contrary to the legislative intent of the statute: "The Committee also deems it important to stress that this legislation is not intended to be unduly punitive in terms of its impact on the industry. It is also intended to facilitate greater sensitivity to the fragile economics faced by operators and companies in providing service...." Council of the

Accordingly, the Commission's decision of two "fineable" requirements under D.C.Code §§ 40–1714(h) and 40–1715(d) is affirmed; however, its finding of a cumulative penalty within the same statute is reversed.

*So ordered.*

DISTRICT OF COLUMBIA REPORT, the D.C. Taxicab Commission Establishment Act of 1985, November 19, 1985.

9. Such as 31 D.C.M.R. 509.1, which specifically provides for a "$500.00 per day maximum fine" for any violation of this chapter.