*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-540

DISTRICT OF COLUMBIA, APPELLANT,

V.

MISS DALLAS TRUCKING, LLC, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-4996-18)

(Hon. Heidi M. Pasichow, Trial Judge)

(Argued May 26, 2020      Decided October 22, 2020)

(Amended November 12, 2020)[*]

*Carl J. Schifferle*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, and *Caroline S. Van Zile*, Deputy Solicitor General, were on the brief, for appellant.

Before MCLEESE and DEAHL, *Associate Judges*, and FISHER, *Senior Judge*.[**]

---

[*] This amended opinion reflects substantive changes to the concluding paragraph of Part II.A, and a non-substantive change to the preceding paragraph.

[**] Judge Fisher was an Associate Judge at the time of argument. His status changed to Senior Judge on August 23, 2020.

DEAHL, *Associate Judge*: The District of Columbia brought a civil enforcement action against Miss Dallas Trucking, LLC for violating the Water Pollution Control Act (WPCA), D.C. Code § 8-103.01 *et seq.* (2019 Repl.). The District alleged one of the company's trucks crashed, causing it to leak about 900 gallons of diesel fuel and engine oil into a drainage channel feeding into the Potomac River. Dallas Trucking refused the District's request to clean up the spill, leaving the District to remediate the site on its own and subsequently file a lawsuit against Dallas Trucking. Following Dallas Trucking's failure to answer the District's complaint, the Superior Court entered a default judgment in the District's favor in an amount equal to its cleanup costs, about $31,000. The court, over the District's objections, declined to impose any kind of civil penalty on Dallas Trucking, a decision the District now appeals.

The District raises two challenges to the trial court's decision not to impose a civil penalty. First, it argues the relevant statutory language—providing that violators of the WPCA "shall be subject to a civil penalty of no more than $50,000," D.C. Code § 8-103.18(b)(2)(A)—mandates that *some* penalty be imposed, however minimal. Second, it argues that even if the imposition of a civil penalty were discretionary, the trial court abused its discretion in finding the District failed to present adequate evidence on each of the four statutory factors the trial court was to

consider when fashioning a penalty. *See generally* D.C. Code § 8-103.18(b)(2)(C). We disagree on the first point but agree on the second. We vacate the trial court's judgment and remand the case for further proceedings consistent with this opinion.

## I.

In March 2016, one of Dallas Trucking's drivers lost control of a company dump truck while exiting Interstate 295 in Southwest Washington, D.C. The truck crashed in a wooded area and spilled about 900 gallons of fuel and engine oil into a drainage channel feeding into the Potomac River. The District's Department of Energy & Environment (DOEE) determined the spill presented "an imminent and substantial threat to the public health or welfare." DOEE reached out to an agent for Dallas Trucking with instructions that it had just two hours to begin cleanup efforts, while offering contact information for local vendors potentially capable of cleaning up the spill. Dallas Trucking refused to take any steps toward remediating the site. DOEE was left to do the cleanup on its own, spending $31,399.69 in the process.

After failed attempts to recover its expenses from Dallas Trucking, the District brought a civil enforcement action against the company under the WPCA, D.C. Code § 8-103.18. The District alleged Dallas Trucking unlawfully discharged pollutants into the District's waters in violation of D.C. Code § 8-103.02 and sought to recover

$31,399.69 in cleanup costs, plus a $50,000 civil penalty. Dallas Trucking failed to answer the complaint, and the trial court entered a default in the District's favor.

Following a hearing on damages, the trial court awarded the District $31,399.69 for its cleanup costs but declined to impose a civil penalty. The trial court explained it had to consider four statutory factors in fashioning any civil penalty: (1) "the size" of the business, (2) its ability "to continue the business despite the penalty," (3) the "seriousness of the violation," and (4) the "nature and extent of its success in" its cleanup efforts. D.C. Code § 8-103.18(b)(2)(C). It concluded the District "did not adequately address" the first two factors regarding Dallas Trucking's size and ability to absorb a fine, even after the court requested supplemental briefing addressing those factors. While the District provided public records showing that Dallas Trucking owned six trucks and employed fourteen drivers, it provided little else, in part because Dallas Trucking failed to participate in the litigation and was non-responsive to the District's inquiries on those topics. The District thus provided *some* evidence regarding Dallas Trucking's size and, inferentially from that, its ability to pay a civil penalty, but the court indicated it had no point of reference to determine if the company was "large or small in the trucking industry." In the court's view, that deficiency left it with insufficient information about Dallas Trucking's size and ability to absorb a fine to impose a penalty.

The District asked the court to reconsider imposing a civil penalty, arguing the WPCA's language that violators "shall be subject to a civil penalty" required the court to impose one. *See generally* D.C. Code § 8-103.18(b)(2). It further argued that any lack of evidence on the first two statutory factors regarding size and ability to absorb a fine should be held against Dallas Trucking—the entity that possessed and withheld the pertinent information—rather than the District. Short of that, the District continued, the court should simply treat those two factors as "insignificant" in its calculus and levy a civil penalty based on the information it did have. The court remained unpersuaded. It concluded imposition of a civil penalty was not mandatory, but discretionary, under the WPCA's terms. It also found the lack of evidence about Dallas Trucking's size and ability to absorb a penalty precluded imposition of one, reasoning it "is not the Court's burden to investigate" those factors, as the District "seems to suggest," but the District's. The District now brings this appeal.

## II.

On appeal, the District advances the same two arguments it made in support of its motion for reconsideration in the trial court: (1) a civil penalty, however minimal, is mandatory under D.C. Code § 8-103.18(b)(2)(A); and (2) even if a civil

penalty is not mandatory, the trial court abused its discretion in concluding no penalty was warranted due to perceived deficiencies in the District's evidence on two of the four statutory factors relevant to fashioning a civil penalty. We disagree on the first point but agree on the second.

## A.

Whether civil penalties are mandatory under the WPCA is a question of statutory interpretation. We review it de novo, *Eaglin v. District of Columbia*, 123 A.3d 953, 955 (D.C. 2015), and conclude such penalties are not mandatory.

We begin with the relevant statutory text. *See Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) ("[W]e must first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning. . . . [T]he intent of the lawmaker is to be found in the language that he has used.") (internal citation and quotation marks omitted). The statute provides, "A person who violates the [WPCA] shall be subject to a civil penalty of no more than $50,000 for each violation." D.C. Code § 8-103.18(b)(2)(A). The critical phrase is "shall be subject to a civil penalty," which the District contends requires that a civil penalty be imposed because the word "shall" typically connotes a mandate. This much is true. *See, e.g., Williams v.*

*United States*, 33 A.3d 358, 360 (D.C. 2011) ("Verbs such as 'must' or 'shall' denote mandatory requirements.") (alterations and citation omitted).

But we cannot stop reading at the word "shall." The words that follow, "be subject to," indicate violators are only exposed to a civil penalty, not that they must incur one. *See* BLACK'S LAW DICTIONARY 1651 (10th ed. 2014) (defining "subject" as "exposed, liable, or prone," and "dependent on or exposed to (some contingency); esp., being under *discretionary* authority") (emphasis added); AMERICAN HERITAGE DICTIONARY 1788 (3d ed. 1992) (defining "subject" as "in a position or in circumstances that place one under the power or authority of another," and as "[p]rone, disposed" and "exposed"). That a violator "shall be subject to" a civil penalty thus, most naturally read, means only that "a violator is liable to be assessed a civil penalty, not that he or she *must* be." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1397 (9th Cir. 1995) (O'Scannlain, J., dissenting in part) (emphasis in original); *see also Bernstein Mgmt. Corp. v. District of Columbia Rental Hous. Comm'n*, 952 A.2d 190, 193–94 & n.6 (D.C. 2008) (noting D.C. Council's intent for statute providing violators "shall be subject to a civil fine" was "to make clear . . . [agencies] *may* impose the fines authorized") (emphasis added); *DCX, Inc. v. District of Columbia Taxicab Comm'n*, 705 A.2d 1096, 1099 (D.C. 1998) (where a statute provided "any violation . . . shall be subject to a civil fine" and two violations

occurred, "as a matter of plain meaning . . . two fines *may* be imposed") (emphasis added). Indeed, given the indeterminate nature of the words "be subject to," the word "shall" communicates only that the violator's *exposure* to a civil penalty is certain, not that she must be assessed one.

We acknowledge the District has considerable support for its contrary interpretation. It cites four United States Courts of Appeals decisions interpreting the same "shall be subject to a civil penalty" language in the federal Clean Water Act, 33 U.S.C. § 1319(d)—which the WPCA was modeled after—as mandating a civil penalty. *See United States v. Lexington-Fayette Urban Cnty. Gov't*, 591 F.3d 484, 488 (6th Cir. 2010) ("Several courts of appeals have read this language to require that a civil penalty must be imposed in every case in which a court has found a Clean Water Act violation."); *Leslie Salt*, 55 F.3d at 1397 ("[T]he use of the words 'shall be subject to' means that civil penalties are mandatory" under the federal Clean Water Act.); *Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1142 (11th Cir. 1990) ("This language makes clear that . . . some form of penalty is required."); *Stoddard v. W. Carolina Reg'l Sewer Auth.*, 784 F.2d 1200, 1208 (4th Cir. 1986) ("This language leaves little doubt that . . . a penalty in some form is mandated.").

Those decisions are not binding on us and we find their reasoning unpersuasive. Only one of the four circuits—the Ninth Circuit, over dissent, in *Leslie Salt*—even attempted to grapple with the indeterminate nature of the phrase "be subject to." 55 F.3d at 1396–97. It acknowledged, "[a]t first glance," the phrase "shall be subject to" means "penalties are discretionary," *id.*, just as we conclude. Yet, the Ninth Circuit deviated from that admittedly most-natural reading of the statutory language in significant part because its sister circuits before it had done so. *Id.* at 1397. While there is a strong pull to interpret a federal statute uniformly across circuits, *see Am. Vantage Co. v. Table Mtn. Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002), there is no similarly strong incentive for us to align our interpretation of the District's WPCA with the distinct federal Clean Water Act.

Even if we found the phrase "shall be subject to" ambiguous, the remainder of the statute points to resolving that ambiguity in favor of discretionary, rather than mandatory, civil penalties. Critical to that conclusion is that the D.C. Council did not set a minimum civil penalty, so that if one were mandated, it could be nominal, such as a penny. *See* D.C. Code § 8-103.18(b)(2)(A) (permitting "a civil penalty of no more than $50,000"); *id.* § 8-103.18(b)(2)(B) (permitting "a civil penalty of no more than $250,000"). That would be a strange intention to attribute to the D.C. Council because it is difficult to see the value of a mandatory civil penalty of a mere

nominal amount. The District counters that even a nominal penalty can serve the symbolic function of demonstrating WPCA violations "are treated seriously." We fail to see how tacking a cent or two onto an award conveys anything serious. Moreover, such a symbolic gesture seems ill-fitting where the WPCA imposes a form of strict liability on violators,[1] without regard to their culpability. *See generally Loftus v. District of Columbia*, 51 A.3d 1285, 1289 (D.C. 2012) (noting "the extent to which a strict liability reading of the statute would seemingly encompass entirely innocent conduct") (quoting *Santos v. District of Columbia*, 940 A.2d 113, 117 (D.C. 2007)). A person who took all reasonable or even excessive measures to prevent WPCA infractions might nonetheless find herself violating it, through no fault of her own, making the WPCA a poor candidate for symbolic gestures of condemnation.

The District further argues that the WPCA elsewhere, in its provisions governing administrative enforcement, provides "a civil penalty . . . *may* be assessed by the Mayor," D.C. Code § 8-103.17(d)(1) (emphasis added). In its view, that demonstrates the D.C. Council knew how to draft a discretionary penalty in plain terms, so that § 8-103.18(b)(2)(A)'s more ambiguous "shall be subject to" phrasing

---

[1] The WPCA makes all violators "liable for the full costs of" remediation unless the pollutant "discharge was caused solely by (1) an act of God, (2) negligence on the part of the District, (3) an act of war, (4) an act or omission of a 3rd party, or (5) any combination of the foregoing causes[.]" D.C. Code § 8-103.17(e).

should be read as codifying a mandatory penalty. *See Leslie Salt*, 55 F.3d at 1397 (reaching that conclusion when comparing 33 U.S.C. § 1319(d) with 33 U.S.C. § 1319(g)(1) of the federal Clean Water Act); *cf. Bd. of Trs. of Univ. of District of Columbia v. Joint Review Comm. on Educ. in Radiologic Tech.*, 114 A.3d 1279, 1283 (D.C. 2015) ("[W]here Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (ellipsis omitted) (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993)). But the argument has no force because the converse is also true. The WPCA, in its provisions governing criminal enforcement, contains plain and unmistakable language indicating fines are sometimes mandatory when it states that "[a] person *shall be fined* at least $2,500" for criminal violations, § 8-103.16(a)(2) (emphasis added), so that we might just as readily conclude that the absence of such clear and unmistakable language mandating a penalty in § 8-103.18(b)(2)(A) suggests civil penalties are discretionary. This analytical point thus does not favor reading § 8-103.18(b)(2)(A)'s civil penalty as either mandatory or discretionary; it is a wash. It provides no reason to abandon the most natural reading of the phrase "shall be subject to" as connoting a discretionary civil penalty rather than a mandatory one.

**B.**

While the trial court had the discretion to impose no civil penalty, we remand for reconsideration because it appears the court believed itself precluded from imposing one due to the "incomplete" information on the first and second relevant statutory factors. *See generally* D.C. Code § 8-103.18(b)(2)(C). The WPCA does not embody so rigid a rule; a relative lack of evidence on two of the four pertinent statutory factors does not preclude imposition of a civil penalty. The court's mistake of law was an abuse of discretion warranting a remand for reconsideration. *See P.F. v. N.C.*, 953 A.2d 1107, 1116 (D.C. 2008) ("The exercise of judicial discretion must be founded on correct legal principles.") (alterations and citations omitted); *In re J.D.C.*, 594 A.2d 70, 75 (D.C. 1991) ("[A] trial court abuses its discretion when it rests its conclusions on incorrect legal standards.").

The trial court, in determining the amount of any civil penalty to be imposed, was required to consider four factors: (1) the size of Dallas Trucking's business; (2) its ability to continue doing business despite the penalty; (3) the seriousness of its violation; and (4) the nature and the extent of success in its efforts to mitigate the effects of the discharge. *See* D.C. Code § 8-103.18(b)(2)(C). The trial court never weighed the information it possessed on those four factors. It said nothing about

Dallas Trucking's dereliction of cleanup efforts, only explaining it "did not award a penalty of more than $0" because the District "gave the Court incomplete information" on the first two factors related to Dallas Trucking's size and ability to absorb a fine. But in listing the four pertinent statutory factors that the trial court must consider, the statute does not instruct that all four factors must be established as counseling in favor of a civil penalty for one to be imposed. *See id.* That would be a particularly unjust scheme in those cases where critical information in the violator's possession—related to the company's size and ability to absorb a fine—is practically unavailable to the District so that a company might effectively immunize itself from a civil penalty by withholding it. The statute does not create so perverse an incentive. Indeed, even if it were clearly established that Dallas Trucking is a small company, unable to absorb the $50,000 penalty sought by the District, the trial court might still determine the violation was serious enough and the failure to undertake cleanup efforts aggravating enough to warrant a fine that would cripple the relatively small business.

The District further argues, as it did in the trial court, that it was Dallas Trucking's burden to show it lacked the size and ability to absorb a fine if those factors were to mitigate an otherwise fitting civil penalty. Because the information as to those factors "would have been uniquely within Dallas Trucking's possession,"

the argument goes, any uncertainty as to them should be held against Dallas Trucking. The District offers substantial support for its position, by analogy to cases interpreting the federal Clean Water Act. *See, e.g.*, *United States v. Gulf Park Water Co., Inc.*, 14 F. Supp. 2d 854, 868 (S.D. Miss. 1998) ("Where a violator cannot show that a penalty will have a ruinous effect, the economic impact factor under Section 309(d) [of the Clean Water Act] will not reduce the penalty."); *United States v. Smith*, No. 96-2450, 1998 WL 325954, at *3 (4th Cir. June 18, 1998) ("[T]he burden was [defendant's] to show an inability to pay the penalty."). But there is also strong reason to draw the contrary conclusion, as courts interpreting similar civil penalty provisions have held the "proponent of the penalty assessment" has "the burden of going forward with evidence on all the statutory factors—including ability to pay." *Dazzio v. F.D.I.C.*, 970 F.2d 71, 77 (5th Cir. 1992); *see also Merritt v. United States*, 960 F.2d 15, 18 (2d Cir. 1992) ("If Congress had intended a different result than placing the burden of proof on the proponent [of a civil penalty] when a defendant's lack of resources is an issue, it could have written inability to pay a fine into the statute as an affirmative defense and shifted the burden of going forward with evidence onto the defendant. Congress did not do that.").[2]

---

[2] Notably, both *Merritt* and *Dazzio* were reviewing agency actions following administrative proceedings. We doubt that is a meaningful distinction, though, particularly where the WPCA provision at issue, D.C. Code § 8-103.18(b)(2), is also enforceable through administrative proceedings, D.C. Code § 8-103.17(d)(1) (providing for enforcement through "administrative processes," including by

It is admittedly a tricky legal issue.  Rather than squarely confronting it here—where we do not have the benefit of adversarial briefing—we hold Dallas Trucking's failure to participate in this litigation against it.  *See Hobley v. L. Off. of S. Howard Woodson, III*, 983 A.2d 1000, 1004 n.6 (D.C. 2009) ("[A]n appellee's failure to file a brief is a factor that we may appropriately consider" when determining whether reversal is warranted.); *Cal. Sportfishing Prot. All. v. Callaway*, No. 12-cv-0843, 2012 WL 3561968, at *1 (E.D. Cal. Aug. 17, 2012) (recommending full amount of requested civil penalty for federal Clean Water Act violation "[b]ecause defendant has not responded to the complaint" and "the court has no evidence before it regarding . . . the economic impact of the penalty on defendant or any other evidence favoring a reduction of the penalty"), *adopted by* 2012 WL 4834406 (E.D. Cal. Oct. 10, 2012).  Faced with some uncertainty on the legal issue—and with substantial support for each of the competing views—we conclude Dallas Trucking had the burden of establishing its size and inability to pay a fine if those factors were to

---

levying civil penalties "under § 8-103.18(b)(2)").  It would be quite the curiosity if the District bore the burden of establishing the § 8-103.18(b)(2)(C) factors in administrative proceedings—as *Merritt*, *Dazzio*, and our own administrative regulations suggest, 1 DCMR § 2822.1 ("Unless otherwise established by law, the proponent of an order shall have the burden of proof, that is, the requirement to persuade the Administrative Law Judge on *every contested factual issue*.") (emphasis added)—but not in civil proceedings before a court of law.

mitigate an otherwise fitting civil penalty because it has forfeited any argument to the contrary.

We do not foreclose the possibility that the trial court, on remand, will reach the same conclusion as before:  that no civil penalty is warranted.  The trial court does have *some* evidence before it as to Dallas Trucking's size and ability to pay a fine and it is possible the trial court will determine that evidence is enough to preclude imposition of a civil penalty here when weighing all the statutory factors. But it must undertake that inquiry disabused of any view that the WPCA required the District to establish all four factors militated in favor of imposing a penalty.  We conclude Dallas Trucking's failure to participate in the litigation forfeits any argument that it was the District's burden to establish the first two of those factors.

## III.

We vacate the Superior Court's judgment and remand for the trial court to reconsider, in light of the above, whether a civil penalty should be imposed.

*So ordered.*